[No. 66605-9. En Banc.]
Argued January 12, 1999.    Decided April 15, 1999.

THE STATE OF WASHINGTON, *Petitioner,* v. JAMES BENCIVENGA, *Respondent.*

*David S. McEachran, Prosecuting Attorney*, and *Laura D. Hayes, Deputy*, for petitioner.

*Shannon B. Marsh* and *Amy G. Williams* of *Washington Appellate Project*, for respondent.

SANDERS, J. — After James Bencivenga's conviction at a bench trial for attempted burglary in the second degree, the Court of Appeals, Division One, reversed for insufficiency of the evidence and remanded for dismissal with prejudice. *State v. Bencivenga*, No. 39153-4-I, slip op. at 4 (Wash. Ct. App. Jan. 26, 1998). We granted the State's petition for review, reverse the Court of Appeals, and affirm Bencivenga's conviction.

## FACTS

At 3:30 on a cold and snowy January morning Sue Burke watched as two individuals in dark clothing attempted to pry open the back door of a Kentucky Fried Chicken restaurant (KFC) located across the street from her house in Bellingham. Burke dialed 911. Bellingham Police Officers Dennis James, Glen Wong, Jason Monson, and Monson's partner, police dog Major, responded. Wong investigated the crime scene. Major, accompanied by James and Monson, picked up a scent and followed it to a fence about five blocks from the KFC. From behind the fence Bencivenga responded, "Okay. I'm coming out."

After Bencivenga climbed over the fence he was handcuffed by Officer James and placed in a patrol car. James apprised Bencivenga of his *Miranda* rights. *Miranda v.*

*Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R.3D 974 (1966). At trial James testified the defendant waived his right to remain silent and then admitted he had tried to force the KFC door, claiming, however, he had not intended to steal anything, but rather simply sought to win a $100 bet with a friend that he could open the door to the KFC by removing a pin. Officer Wong's investigation confirmed fresh pry marks by the lock mechanism and chipped paint on the door that Bencivenga had attempted to open. Wong then photographically documented this evidence of attempted forced entry.

Judge Pro Tem Mary Kay Becker found Bencivenga guilty of attempted burglary in the second degree at a bench trial and sentenced the defendant to an eight-month jail term, allowing the entire sentence to be converted to work release.

Bencivenga appealed. By unpublished per curiam opinion, Division One reversed Bencivenga's conviction for insufficiency of the evidence, ordering dismissal with prejudice.

## ANALYSIS

██ We begin by repairing to that fundamental of criminal procedure which requires the state to prove beyond a reasonable doubt every element of the offense charged. *State v. Tongate*, 93 Wn.2d 751, 753, 613 P.2d 121 (1980) (citing *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)). However, we recall it is not the role of the reviewing court to determine whether or not *it* believes the evidence at trial established guilt beyond a reasonable doubt; " '[i]nstead the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime *beyond a reasonable doubt.*' " *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (emphasis added by this court in *Green*)).

██ A person commits second degree burglary if, with

the intent to commit a crime against a person or property therein, he enters or remains unlawfully in a building other than a vehicle or a dwelling. RCW 9A.52.030. One attempts the crime if, with intent to commit the principal crime, he commits any act constituting a substantial step toward its commission. RCW 9A.28.020(1). Both the substantial step and the intent must be established beyond a reasonable doubt for a conviction to lawfully follow. *State v. Aumick*, 126 Wn.2d 422, 429-30, 894 P.2d 1325 (1995).

The Court of Appeals premised reversal of Bencivenga's conviction upon its reading of *State v. Jackson*, 112 Wn.2d 867, 774 P.2d 1211 (1989). *Bencivenga*, slip op. at 3. There the defendant was convicted of attempted second degree burglary after taking short running kicks at the Plexiglas window area of a door. *Jackson*, 112 Wn.2d at 869-70. Over the defendant's objection the jury was instructed, in relevant part:

> A person who *attempts to* enter or remain unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein . . . . This inference is not binding upon you and it is for you to determine what weight, if any, such inference is to be given.

*Id.* at 872. The instruction given varied from the text of 11A WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 60.05 (2d ed. 1994) (WPIC), the intent instruction used in burglary cases, by adding the italicized words. We reversed the conviction, holding WPIC 60.05 may be given properly in a burglary case, but not where the state pleads and proves only attempted burglary. *Jackson*, 112 Wn.2d at 876.

In *Jackson* we explained that for the fact finder to draw inferences from proven circumstances, the inferences must be rationally related to the proven fact. " 'The jury is permitted to infer from one fact the existence of another essential to guilt, if reason and experience support the inference,' " *id.* at 875 (quoting *Tot v. United States*, 319 U.S. 463, 467, 63 S. Ct. 1241, 1244, 87 L. Ed. 2d 1519 (1943)), adding:

A presumption is only permissible when no more than one conclusion can be drawn from any set of circumstances. An inference should not arise where there exist other *reasonable* conclusions that would follow from the circumstances.

*Id.* at 876 (emphasis added). In other words, if the finder of fact concludes an alternative *reasonable* explanation exists for the defendant's actions, then the State has failed to meet its burden of establishing guilt beyond a reasonable doubt. This is the language which appears to drive the Court of Appeals' opinion, *see Bencivenga,* slip op. at 3; however, the Court of Appeals misconstrues it. The issue we there decided was whether it was error "to *instruct* the jury that it may infer the defendant acted with intent to commit a crime within the building from the fact that the defendant may have attempted entrance into the building," concluding it was. *Jackson,* 112 Wn.2d at 869-70 (emphasis added). We also held *"giving of the instruction* could not be harmless error since it tended to prove an element of the commission of a crime," *Jackson,* 112 Wn.2d at 877 (emphasis added), and a trial court "cannot *instruct* the jury, where the charge is attempted burglary, that it may infer the defendant acted with intent to commit a crime . . . [where] there exist other equally reasonable conclusions which follow from the circumstances." *Id.* at 870 (emphasis added).

But we did not hold in *Jackson* that the fact finder would be precluded from determining what is "reasonable." To the contrary, we sought to free the fact finder from any direction toward guilt.

The reason *Jackson* does not apply to this situation, which does not involve a jury instruction, is that such would invade the province of the fact finder by appropriating to the appellate court the role of factually determining the reasonableness of an inference. Just because there are hypothetically rational alternative conclusions to be drawn from the proven facts, the fact finder is not lawfully barred against discarding one possible inference when it concludes such inference unreasonable under the circumstances.

Nothing forbids a jury, or a judge, from logically inferring intent from proven facts, so long as it is satisfied the state has proved that intent beyond a reasonable doubt. *See Mullaney v. Wilbur,* 421 U.S. 684, 702, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975); *Morissette v. United States,* 342 U.S. 246, 274, 72 S. Ct. 240, 96 L. Ed. 288 (1952); *Tot,* 319 U.S. at 467. An essential function of the fact finder is to discount theories which it determines unreasonable because the finder of fact is the sole and exclusive judge of the evidence, the weight to be given thereto, and the credibility of witnesses. *State v. Snider,* 70 Wn.2d 326, 327, 422 P.2d 816 (1967). That the crime here charged is attempted burglary does not change the analysis. Intent to attempt a crime also may be inferred from all the facts and circumstances. *State v. Nicholson,* 77 Wn.2d 415, 420, 463 P.2d 633 (1969). What constitutes a substantial step is also a factual question. *State v. Workman,* 90 Wn.2d 443, 449, 584 P.2d 382 (1978). The role of the appellate court is to determine whether or not any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found, beyond a reasonable doubt, all the essential elements of the crime. *Green,* 94 Wn.2d at 221.

Here, the evidence showed that Bencivenga, dressed in dark clothing, attempted to pry open the door of the KFC at about 3:30 A.M. in the midst of a snowstorm. While he had an exculpatory story, the trial judge, after reviewing all the evidence and listening to all the witnesses, simply did not believe Bencivenga did this on a bet, finding instead, beyond all reasonable doubt, Bencivenga acted with the requisite intent. Report of Proceedings at 61. We cannot say this determination, based on the evidence in this record, is not a rational inference supported by the facts which the trial court accepted as true.

Similarly we affirmed a conviction for attempted second degree burglary on like facts in *State v. Chacky,* 177 Wash. 694, 696, 33 P.2d 111 (1934). There at about midnight a merchant police officer and a companion saw two men drive up to a Piggly Wiggly store in Tacoma. *Id.* at 695. After

both men examined the front of the store, Chacky got a crowbar and pried the padlock off the door of the building. At that time the police officer moved toward the building and Chacky and his companion fled. The officer found in Chacky's car another crowbar and a claw hammer. *Id.* Affirming Chacky's conviction we stated the "evidence was enough to take the case to the jury on the questions of criminal intent and overt act . . . ." *Id.*

More recently we affirmed a conviction for residential burglary where the defendant had attempted to enter a home through the kitchen window. *State v. Brunson*, 128 Wn.2d 98, 102, 905 P.2d 346 (1995). When the homeowner screamed, the defendant climbed back out of the window, telling the woman he just wanted to use the phone. Based on the homeowner's description, the defendant was arrested at a nearby bus stop. In the homeowner's yard, the police found property that had been taken from her kitchen and also discovered a tree stump had been pushed up underneath the window. *Id.* Although the issue before this court involved the propriety of an inference instruction, we noted that this evidence was sufficient for a jury to find the intent to commit a crime within the residence. *Id.* at 109.

Criminal intent, of course, resides exclusively within the mind of the criminal, but it may be proved by facts and circumstances more readily perceived by others. *See State v. Bergeron*, 105 Wn.2d 1, 10-11, 711 P.2d 1000 (1985). In *Bergeron*, the defendant, at 3:15 A.M., broke a basement window in an occupied residence and pushed it inward off its track. *Bergeron*, 105 Wn.2d at 11. Upon the arrival of the police the defendant ran away but was captured with the aid of an unnamed tracking dog. He admitted he intended to enter the house, but not that he intended to commit a crime therein. We affirmed a conviction for attempted burglary in the second degree, concluding that a rational finder of fact could determine that the defendant attempted to enter with the intent to commit a crime therein. *Id.*

Bencivenga relies heavily upon the fact that the defend-

ant in *Bergeron* had admitted his intent to enter the home, whereas here the defendant admitted neither the intent to enter nor the intent to commit a crime within the KFC. It is true that we have stated that the essential proofs of guilt cannot be supplied by a pyramiding of inferences. *State v. Weaver,* 60 Wn.2d 87, 89, 371 P.2d 1006 (1962). However, *Weaver* involved a situation where the only proof of the defendants' connection with the count charged was the discovery of a tool that may or may not have been used in the commission of a burglary in a spot where the defendants had been. *Id.* But here the evidence against Bencivenga included not just "inferences," but also his dress, conduct, and his admission that he was attempting to pry off the lock of the KFC door at 3:30 A.M. in a snowstorm. Also, our decision in *Weaver* was predicated on our application of the former rule which required that if a conviction rests solely on circumstantial evidence, the circumstances proved must be unequivocal and inconsistent with innocence. *Id.* We have since rejected this rule in favor of the rule that whether the evidence be direct, circumstantial, or a combination of the two, the jury need be instructed that it need only be convinced of the defendant's guilt beyond a reasonable doubt. *State v. Gosby,* 85 Wn.2d 758, 767, 539 P.2d 680 (1975). *See also* WPIC 5.01 (law makes no distinction between direct and circumstantial evidence); 1 CLIFFORD S. FISHMAN, JONES ON EVIDENCE: CIVIL AND CRIMINAL § 5.17 at 450 (7th ed. 1992) (Statement that a fact finder cannot base one inference upon another is "a gross overstatement. If the inferences and underlying evidence are strong enough to permit a rational fact finder to find guilt beyond a reasonable doubt, a conviction may be properly based on 'pyramiding inferences.' "). The broad statement of the Court of Appeals that "[a]n inference should not arise where there are other reasonable conclusions that would follow from the circumstances," *Bencivenga,* slip op. at 3, is correct; however, it is the province of the finder of fact to determine what conclusions reasonably follow from the particular evidence in a case. The Court of Appeals is reversed and Bencivenga's conviction is affirmed.

GUY, C.J., and DURHAM, SMITH, JOHNSON, MADSEN, ALEXANDER, TALMADGE, and IRELAND, JJ., concur.