[No. 46874-0-I. Division One. August 20, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. DARRIN LYNN BROOKS, *Appellant*.

---

926

*Richard R. Tassano, Gregory C. Link,* and *Kira T. Franz* (of *Washington Appellate Project*), for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Jill A. Otake, Deputy,* for respondent.

APPELWICK, J. — Darrin Brooks appeals his conviction and sentence for attempted residential burglary. The jury could have found beyond a reasonable doubt that Brooks intended to commit a crime inside the apartment that he attempted to enter, from all of the circumstances surrounding Brooks' actions. Thus, we affirm the conviction. But the trial court erred in imposing a Drug Offender Sentencing Alternative (DOSA) sentence by miscalculating the standard range of Brooks' sentence. Under RCW 9.94A.420, the high end of the standard range of Brooks' sentence cannot exceed the statutory maximum for the crime. Therefore, we reverse the sentence and remand for entry of a DOSA sentence based on a standard sentence range that is capped at 60 months, the statutory maximum for the crime.

## FACTS

The Charbonau apartment complex in Seattle is secured with a fence around the entire perimeter. In order to enter the complex, one must have a key to the main entrance or must contact a resident or the management office through an intercom system to request entry. On February 18, 2000, between 3:30 and 4:00 P.M., Michel Amrone, the apartment manager, was in the management office. Amrone observed Darrin Brooks trying to stick a screwdriver into the lock of the door to the main entrance of the apartment complex. Brooks spent approximately two minutes trying to open the door with the screwdriver. When he was ultimately unsuccessful, he walked away from the door.

Amrone immediately went outside the entrance to look for Brooks. About two minutes later, Amrone found Brooks standing in the patio of one of the apartments, trying to

open the apartment door with the screwdriver. Amrone noticed fresh marks on the door related to Brooks' use of the screwdriver.

Amrone asked Brooks what he was doing, and Brooks responded that he wanted to use the rest room. Amrone approached Brooks, who then swung at him. Amrone called for his assistant, and the two men tackled Brooks to the ground. Amrone called the police.

The police arrived and arrested Brooks and read him his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Brooks yelled, "You didn't see me inside the building!" When a police officer asked Brooks about the screwdriver, Brooks replied, "I didn't try to open the door with the screwdriver."

Meanwhile, another police officer examined the marks on the door to the apartment. The officer noticed that the marks were about the width of a screwdriver. The paint appeared to have chipped and some of the wood had splintered at the location of the markings.

The State charged Brooks with one count of attempted residential burglary. A jury found Brooks guilty as charged. At sentencing, the trial court sentenced Brooks pursuant to the Drug Offender Sentencing Alternative and imposed 27.5625 months of confinement and 27 months of community custody. The court calculated Brooks' DOSA incarceration time based on a standard range of 47.25 to 63 months. Brooks appeals both his conviction and his sentence.

## ANALYSIS

### A. Sufficiency of the Evidence

■ Brooks argues that the evidence failed to establish beyond a reasonable doubt that he was guilty of attempted residential burglary. The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). Additionally, all reasonable infer-

ences from the evidence must be drawn in favor of the State and interpreted against the defendant. *State v. Bryant*, 89 Wn. App. 857, 869, 950 P.2d 1004 (1998).

To prove the essential elements of the crime of attempted residential burglary, the State was required to prove beyond a reasonable doubt that Brooks intended to commit residential burglary and that he took a substantial step toward committing residential burglary. RCW 9A.28-.020(1). A person commits residential burglary when he "enters or remains unlawfully in a dwelling other than a vehicle" with the intent to commit a crime in that dwelling. RCW 9A.52.025(1).

Brooks concedes that, based on the facts the State presented at trial, the jury could reasonably have inferred that Brooks intended to enter a dwelling. But, he argues there was insufficient evidence to draw the additional inference that he intended to commit a crime inside the dwelling.

Criminal intent may be inferred from all the facts and circumstances surrounding the commission of an act. *State v. Lewis*, 69 Wn.2d 120, 123, 417 P.2d 618 (1966). "Although intent may not be inferred from conduct that is patently equivocal, it may be inferred from conduct that plainly indicates such intent as a matter of logical probability." *State v. Bergeron*, 105 Wn.2d 1, 20, 711 P.2d 1000 (1985).

Here, the jury could have concluded beyond a reasonable doubt from the circumstances surrounding Brooks' actions, that Brooks intended to commit a crime inside the apartment. First, despite the fact that there was an intercom system in the complex, Brooks chose to use a screwdriver to attempt to enter the complex. Second, when his initial attempt to enter the complex with a screwdriver failed, Brooks entered the complex through a gate and quickly arrived on the patio of one of the apartments. Once there, he again attempted to use a screwdriver to open the apartment door. There was no evidence that Brooks made an effort to knock on the windows or the doors to that apartment in order to notify any potential occupants of his

presence. The use of the screwdriver rather than conventional methods to seek entry further illustrates that Brooks sought to enter the apartment for illegal reasons.

Brooks' explanation to Amrone that he needed to use the bathroom was illogical: he could have used the rest room at Virginia Mason Medical Center, located two blocks away. Brooks had not used the intercom to ask the office manager if he could use the office rest room. The jury could reasonably have inferred from Brooks' statement to Amrone that Brooks was trying to hide his intent to commit a crime.

Brooks argues that the jury must have inferred that he meant to commit a crime inside the apartment merely because he attempted to enter the apartment. Brooks relies on *State v. Jackson* for his contention that such an inference is inappropriate. 112 Wn.2d 867, 774 P.2d 1211 (1989). As in the present case, the defendant in *Jackson* was convicted of attempted burglary. He had been observed taking short running kicks at the Plexiglas window area of a door to a building. The question in *Jackson* was whether the trial court erred in instructing the jury that it could infer the defendant's intent to commit a crime inside a building from the mere fact that he attempted to enter the building. 112 Wn.2d at 872.[1] The Court held that such an instruction was improper in an attempted burglary case: "In order to give an instruction that an inference of an intent to commit a crime existed in a burglary case, there must be evidence of entering or remaining unlawfully in a building. The instruction on intent cannot be given without evidence to support it and that must place the defendant within a building." *Jackson*, 112 Wn.2d at 876. The Court further explained, "an inference cannot follow that there was intent

---

[1] The relevant jury instruction in *Jackson* stated:

A person who *attempts to* enter or remain unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein unless such entering or remaining shall be explained by evidence satisfactory to the jury to have been made without such criminal intent. This inference is not binding upon you and it is for you to determine what weight, if any, such inference is to be given.

112 Wn.2d at 872.

to commit a crime *within* the building just by the defendants' shattering of the window in the door. This evidence is consistent with two different interpretations: one indicating attempted burglary, a felony; and the other malicious mischief, a misdemeanor." *Jackson*, 112 Wn.2d at 876.

Brooks' reliance on *Jackson* is misplaced. As the Supreme Court explained in a more recent case, *Jackson* does not apply where there is no jury instruction at issue such as there was in *Jackson. See State v. Bencivenga*, 137 Wn.2d 703, 708, 974 P.2d 832 (1999). In *Bencivenga*, the defendant was seen at 3:30 A.M. trying to pry open the back door of a Kentucky Fried Chicken restaurant. 137 Wn.2d at 705-06. The issue was whether the jury could reasonably infer from the evidence that the defendant had intended to commit a crime inside the building. The Court held that although it would be error to *instruct* the jury that it could infer such an intent from the evidence, the fact finder was nonetheless free to make such a determination if reasonable. *Bencivenga*, 137 Wn.2d at 708. The Court explained:

> The reason *Jackson* does not apply to this situation, which does not involve a jury instruction, is that such would invade the province of the fact finder by appropriating to the appellate court the role of factually determining the reasonableness of an inference. Just because there are hypothetically rational alternative conclusions to be drawn from the proven facts, the fact finder is not lawfully barred against discarding one possible inference when it concludes such inference unreasonable under the circumstances.

*Bencivenga*, 137 Wn.2d at 708. The Court concluded that the facts of the case supported the jury's inference that the defendant had intended to commit a crime within the restaurant. *Bencivenga*, 137 Wn.2d at 709.

The principles enunciated in *Bencivenga* lead to a similar result in this case. Here, the court did not instruct the jury that it could infer that Brooks intended to commit a crime within the apartment merely from his attempt to enter it. But, as discussed above, the jury could reasonably have concluded from all of the surrounding circumstances that

Brooks had such an intent. Thus, the evidence was sufficient to support the conviction for attempted residential burglary.

B. DOSA Sentence

Brooks next argues that the trial court erred in imposing his DOSA sentence by miscalculating the standard range of his sentence. He requests that this court remand the sentence for imposition of the correct DOSA sentence.

Under the Drug Offender Sentencing Alternative, if the court deems a DOSA appropriate under RCW 9.94A-.120(6)(a) and (b), the court may impose a sentence that includes "a period of total confinement in a state facility for one-half of the midpoint of the standard range." RCW 9.94A.120(6)(b).

Here, the trial court determined the standard range of Brooks' sentence to be 47.25 to 63 months. The court presumably reached this range by examining the sentencing range for the offense under the sentencing grid set forth in RCW 9.94A.310(1), and multiplying that range by 75 percent as required by RCW 9.94A.310(2).

Brooks argues that the trial court's calculation of the standard range fails to account for RCW 9.94A.420. That statute provides:

> If the presumptive sentence duration given in the sentencing grid exceeds the statutory maximum sentence for the offense, the statutory maximum sentence shall be the presumptive sentence.

RCW 9.94A.420. Attempted residential burglary is a class C offense with a statutory maximum of only 60 months. RCW 9A.52.025(2); RCW 9A.28.020(3); RCW 9A.20.021. Thus, according to Brooks, for the purposes of calculating his DOSA sentence, the standard range of the sentence was capped at 60 months.

We agree with Brooks that the trial court erred in determining the standard range of his sentence. " 'Sentence range' means the sentencing court's discretionary range in imposing a nonappealable sentence." RCW 9.94A.030(35).

Generally, a court may not impose a sentence providing for a term of confinement that exceeds the statutory maximum for the crime. RCW 9.94A.120(14). Attempted residential burglary has a statutory maximum of only 60 months. Under RCW 9.94A.420, the statutory maximum is the presumptive sentence. Thus, Brooks' presumptive sentence range was 47.25 to 60 months, rather than 47.25 to 63 months, as the trial court found. The "midpoint" of this range is 53.625 months, not 55.125 months as the trial court calculated. Therefore, under the DOSA statute, Brooks should have received a sentence of one-half that, or 26.8125 months, in confinement, rather than 27.5625 months.

The State contends that Brooks' argument fails, because the DOSA statute does not require sentencing courts to alter a defendant's standard range to fall within the statutory maximum. Again, the DOSA statute provides:

> If the [midpoint of the] standard range is greater than one year . . . the judge may waive imposition of a sentence within the standard range and impose a sentence that must include a period of total confinement in a state facility for one-half of the midpoint of the standard range.

RCW 9.94A.120(6)(b). The statute refers to the midpoint of the standard range, and does not address the statutory maximum. Thus, according to the State, in the event a standard range is higher than the statutory maximum sentence, courts need not recalculate the high end to the statutory maximum.

The State's argument ignores the fact that RCW 9.94A.120(6)(b) still requires the sentencing court to determine what the standard range is before imposing a DOSA. As noted above, under RCW 9.94A.420, the standard range must be reduced where the sentencing grid takes that range above the statutory maximum. This is what occurred in Brooks' case. Thus, despite the failure by the DOSA statute to mention RCW 9.94A.420, that section must be looked to so that the court may properly determine the standard range before imposing a DOSA. RCW 9.94A.420

provides that the standard range, not merely the sentence imposed, is dictated by the statutory maximum for the offense.

The State's argument appears to hinge upon the mistaken belief that "presumptive sentence" means only the sentence imposed and not the range available to the judge when imposing a standard sentence. But this interpretation is contrary to the way the Sentencing Reform Act of 1981 (SRA) defines the term "presumptive sentence" throughout chapter 9.94A RCW. Other sections of the SRA use the term such that it clearly means the standard range and not just the sentence imposed. For instance, RCW 9.94A.370 specifically refers to the standard range as the "presumptive sentence." *See State v. Parker*, 132 Wn.2d 182, 186, 937 P.2d 575 (1997) ("Indeed, RCW 9.94A.370 refers to the standard range as the 'presumptive sentence.' "). Thus, the State's reading of RCW 9.94A.420 is inconsistent with the SRA's use of the term "presumptive sentence."

The conviction is affirmed and the sentence is reversed and remanded. The trial court is instructed to impose a sentence of 26.8125 months confinement.

AGID, C.J., and WEBSTER, J., concur.