2014 JUL 21 AM 10: 34


IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, ) | |
| ) | No. 70428-1-I |
| Respondent, ) | |
| ) | DIVISION ONE |
| v. ) | |
| ) | UNPUBLISHED OPINION |
| JAHAD V.D. HILL, ) | |
| B.D. 04/18/95, ) | FILED: July 21, 2014 |
| ) | |
| Appellant. ) | |
| ) | |

BECKER, J. — In this appeal from a juvenile court disposition finding Jahad Hill guilty of attempted residential burglary, Hill challenges the sufficiency of the evidence supporting the court's findings and conclusions. Because the evidence is sufficient, we affirm.

## FACTS

Based on evidence that Jahad Hill and two other young men attempted to break into the home of Kent Wright, the State charged Hill with attempted residential burglary.

At trial, Jim Beard testified that on October 31, 2012, he was remodeling a house in Kent when he noticed Hill knocking on the door of a house across the street. Beard had been working at the location for several months and had never

seen Hill in the area. He thought Hill was acting suspiciously because he refused to look directly at Beard even though he could tell Beard was watching him.

Beard also saw two other young men walking down the street. Beard looked away for a moment, and when he looked back, the three men had disappeared.

About five minutes after the men disappeared, Kent Police Officer Paul Peter arrived to investigate a glass break alarm at the house Beard had been watching. The owner arrived a short time later. Officer Peter discovered that the outer pane of a double pane window had been broken on the side of the house. At the back of the house, "someone had tried to pry the screen off of the deck area." It appeared the person who pried the screen had used gloves.

As Officer Peter walked around the house, Beard walked up and said, "he had seen people hanging around [the house] that looked suspicious to him." Beard "had seen three [people] all together" but could only describe the person he saw at the front door. Beard described that person as wearing a fur hat with ear flaps, a red shirt, and jeans with a tiger or a dragon on the back pockets. Officer Peter radioed Beard's description and called for backup.

About 15 minutes later, a second officer arrived. While the officers spoke with the homeowner, they received a call reporting a burglary just a few blocks away at the home of Kent Wright.

Wright testified that he was home that day and set his alarm in a mode that causes it to "chirp" when doors or windows are partially opened. The alarm has a display panel that indicates which zone activated the alarm.

Wright testified that after taking a shower, he heard his alarm chirp. The display panel indicated that the sensor on the rear sliding glass door had been tripped. Wright "heard a lot of noise at the windows as if somebody was trying to get in." He ran downstairs and yelled, "'Get the fuck out of here.'" He then opened the blinds next to the sliding door and saw three young men in his backyard. Two of them immediately took off running. The third stared at Wright momentarily and then jumped over the fence. Wright called 911, describing the third man as wearing a furry hat and jeans with a distinctive pattern on the back pockets. The 911 operator told him that the police were already in the neighborhood investigating another break-in. The police then broadcast Beard and Wright's description of the suspects.

Timothy Kovich, a Kent School District employee, testified that he received information describing the suspects and their possible involvement in burglaries just north of Kent Meridian High School. Kovich began monitoring the security cameras at Kent Meridian. Within minutes, he spotted three young men matching the descriptions near a trail system north of the school. One suspect was wearing a hat with ear flaps and pants with embroidery on the rear pockets. Kovich watched as the suspects walked through the school parking lot and then away from the school toward a main access road. At 12:35 p.m., approximately

30 minutes after police received the glass break alarm, Kovich reported his observations of the suspects over police radio.

A security resource officer for the school responded to Kovich's report and detained three suspects matching the descriptions in the school parking lot. He immediately reported this information to dispatch.

Police then brought Beard and Wright to the school for a showup. Wright identified Hill as one of three young men in his backyard. Beard identified Hill as the person he saw knocking on the door of the house across the street from his remodeling job.

Detective Craig Lamp interviewed Hill at the school. Hill said he had taken the bus from his home to Kent Station and then another bus to Kent Meridian High School where he intended to seek enrollment. Detective Lamp asked for bus numbers and times, but Hill did not know either. Detective Lamp also asked Hill if he had been with anybody that day, and he said he had been by himself until he arrived at Kent Meridian High School.

The juvenile court found Hill guilty of the attempted residential burglary of Wright's house. He appeals.

## DECISION

Hill contends there is insufficient evidence to support the juvenile court's finding that he tried to break into Wright's home.

Evidence is sufficient if, after viewing it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the

crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). In reviewing a juvenile adjudication, we determine whether substantial evidence supports the court's findings of fact and whether the findings support the conclusions of law. State v. Alvarez, 105 Wn. App. 215, 220, 19 P.3d 485 (2001). A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences that reasonably can be drawn therefrom. Salinas, 119 Wn.2d at 201. We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. State v. Raleigh, 157 Wn. App. 728, 736-37, 238 P.3d 1211 (2010), review denied, 170 Wn.2d 1029 (2011).

To find Hill guilty of attempted residential burglary, the juvenile court had to find that, with intent to commit residential burglary, he or an accomplice took a substantial step toward committing residential burglary. RCW 9A.28.020(1). A person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle. RCW 9A.52.025(1). A person is an accomplice if, with knowledge that it will promote or facilitate the commission of the crime, he encourages or aids another in committing it. RCW 9A.08.020(3)(a)(i) and (ii). The word "aid" means all assistance whether given by words, acts, encouragement, support, or presence. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.51, at 217 (3d ed. 2008). A person who is present at the scene and ready to assist by his or her presence is aiding

in the commission of the crime. State v. B.J.S., 140 Wn. App. 91, 98, 169 P.3d 34 (2007). Intent may be inferred where the circumstances indicate such intent as a matter of logical probability. State v. Johnson, 159 Wn. App. 766, 774, 247 P.3d 11 (2011).

Hill contends there was insufficient evidence to conclude that he took a substantial step toward committing residential burglary. He concedes the evidence allowed an inference that someone triggered Wright's alarm and made noise by Wright's window. He argues, however, that there was no evidence that he was that person or that he was acting in concert with the other young men. According to Hill, the evidence showed only that he was merely present at the scene. He concludes, therefore, that the finding that he tried to break into Wright's home is not supported by substantial evidence and the conclusion that he took a substantial step toward committing residential burglary is not supported by the findings. We disagree.

The juvenile court found in its written and incorporated oral findings that Hill acted in concert with others. Substantial evidence supports this finding. The evidence either established or supported reasonable inferences that Hill and the other two young men attempted to enter a house near Wright's home only minutes before entering Wright's backyard without permission. Beard testified that around the time of the glass break alarm at the first house, Hill knocked on the door of that house, acted suspiciously, and then suddenly disappeared with the others. This evidence supported inferences that Hill actively participated in

an attempted burglary of the first house and that the three young men acted in concert when they later attempted to open Wright's sliding glass door. This evidence, together with Hill's flight from Wright's residence and subsequent lies to police, supports the court's finding that Hill acted in concert with the others. That finding in turn supports the court's conclusion that he took a substantial step toward the burglary of Wright's home.

Hill next argues there was insufficient evidence to infer that he intended to commit residential burglary, and even if criminal intent could be inferred, "the criminal intent could be malicious mischief or criminal trespass, not burglary." These arguments rest on a misapprehension of the law governing inferences and the scope of our review:

> Just because there are hypothetically rational alternative conclusions to be drawn from the proven facts, the fact finder is not lawfully barred against discarding one possible inference when it concludes such inference unreasonable under the circumstances. Nothing forbids a jury, or a judge, from logically inferring intent from proven facts, so long as it is satisfied the state has proved that intent beyond a reasonable doubt. . . . An essential function of the fact finder is to discount theories which it determines unreasonable because the finder of fact is the sole and exclusive judge of the evidence, the weight to be given thereto, and the credibility of witnesses. . . . That the crime here charged is attempted burglary does not change the analysis. Intent to attempt a crime also may be inferred from all the facts and circumstances. . . . The role of the appellate court is to determine whether or not any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found, beyond a reasonable doubt, all the essential elements of the crime.

(Citations omitted.) State v. Bencivenga, 137 Wn.2d 703, 708-09, 974 P.2d 832 (1999). Here, a rational trier of fact could have concluded beyond a reasonable

doubt that the multiple attempts to enter houses from concealed locations, the suspects' flight, and Hill's dishonesty when interviewed by police supported an inference of intent to commit burglary.

Finally, Hill contends the court improperly based its inference of intent on an inapplicable statute. He notes that during closing arguments, the prosecutor mentioned RCW 9A.52.040, which allows courts to infer criminal intent when a person "*enters or remains* unlawfully in a building." (Emphasis added). Because this statute does not apply to an *attempted* burglary, he concludes the court improperly relied on the statute to infer his intent to commit a crime.

But the juvenile court never mentioned the statute in its ruling. Moreover, after referring to the statute, the prosecutor pointed out that this case involved *attempted* burglary and noted that there was a case-law basis for the court to infer intent in attempted burglary:

> Now, obviously, the State has charged the respondent in this case with attempted residential burglary. So I wanted to also point out that case law, your Honor, allows you to infer intent to commit a crime against a person or property therein in attempt cases like this one.

This was a correct statement of the law. See Bencivenga, 137 Wn.2d at 709 (intent to attempt a crime "may be inferred from all the facts and circumstances."). There was no error based on RCW 9A.52.040.

Given our disposition, we do not address Hill's arguments as to whether reversal could result in the imposition of a lesser included offense.

Affirmed.

WE CONCUR:

Becker, J.