# COURT OF APPEALS, DIVISION III, STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No.  35867-4-III |
| Respondent, | ) | |
| | ) | **ORDER AMENDING** |
| v. | ) | **OPINION** |
| | ) | |
| ROBERT L. AYERST, | ) | |
| | ) | |
| Appellant. | ) | |

IT IS ORDERED that the opinion filed on April 11, 2019, shall be amended as follows:

In the first full paragraph on page 13, the word "murder" shall be struck and the word "burglary" shall be inserted in its place.

PANEL:     Judges Lawrence-Berrey, Siddoway, and Pennell

FOR THE COURT:

ROBERT LAWRENCE-BERREY
CHIEF JUDGE

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35867-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ROBERT L. AYERST, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Robert L. Ayerst appeals his conviction for attempted second degree burglary. He contends the evidence was insufficient to support his conviction. He also filed a statement of additional grounds for review in which he appears to assert that his trial counsel was ineffective and that the trial court erred by denying his pretrial motion to dismiss the charges. We reject his challenges and affirm.

FACTS

The State charged Mr. Ayerst with attempted second degree burglary and second degree malicious mischief,[1] stemming from Mr. Ayerst's actions on the early morning of

---

[1] Mr. Ayerst was later charged with bail jumping by amended information based on his failure to appear in court as required for a pretrial hearing on April 3, 2017.

September 6, 2016. The facts are related from the trial testimony.

Bruce Meacham arrived at his business, the Mr. Suds Car Wash in Clarkston, Washington, at approximately 6:00 a.m. on the morning of September 6, 2016. He observed that the doors to the equipment room appeared damaged[2] and that a tow strap was hanging from the handle but nothing appeared to be missing. Report of Proceedings (RP) at 64-65. Mr. Meacham called the police and provided security footage from the car wash parking lot. The footage depicted Mr. Ayerst arriving at the car wash around 2:20 a.m. in his white GMC pickup truck.

Mr. Ayerst drove his truck through the car wash lot, past the doors to the equipment room, and pulled into one of the wash bays. He exited his truck and began washing it. An unidentified passenger exited the truck holding what appeared to be a tow strap with a metal hook under his sweatshirt. The passenger walked off camera in the direction of the equipment room doors. He then returned to the truck, no longer carrying the tow strap. A short time later, the passenger again exited the truck and disappeared off camera in the direction of the equipment room.

---

[2] Mr. Meacham testified that he obtained an estimate of approximately $1,900 to repair the damaged doors.

After Mr. Ayerst finished washing the truck, the passenger rejoined him and the truck backed out of the wash bay, exited the lot, and entered on the other side of the car wash. The truck pulled up to the vacuums next to the car wash and then backed up out of view of the camera to the area in front of the equipment room doors. The truck remained in that position a short time before it pulled forward and exited the lot. The equipment room doors could not be seen on the security footage, but the footage did show that Mr. Ayerst's headlights "dip[ped]" as the truck began to pull forward. Report of Proceedings (RP) at 75. Detective Bryon Denny testified that he believed the lowering of the headlights was consistent with the vehicle having some type of dragging motion on it because the area where the truck was located was an asphalt area where there were no dips or bumps that would have caused the truck "to jar in that motion." RP at 76. He posited that Mr. Ayerst and his unidentified accomplice had attached the tow strap to the doors and the truck, and then pulled away, springing the doors open and leaving the tow strap behind.

Officer Brian Odenborg observed Mr. Ayerst's truck at approximately 2:55 a.m. at the Zip Trip convenience store located across the street from Mr. Suds. The officer noted that the two men sitting in the car did not make eye contact or otherwise acknowledge his presence, which he found suspicious. Due to the hour of the night and the apparent lack

3

of purpose to the men's presence at the store, he ran the plate on the truck through dispatch and it returned to Mr. Ayerst, a resident of Dayton, Washington.

The State subsequently arrested Mr. Ayerst, who denied that he was in Clarkston on September 6, 2016. When police showed him a still frame from the security footage, Mr. Ayerst denied that he was the person in the footage and claimed that he often loaned out his vehicle.

At trial, Mr. Ayerst testified that on the early morning of September 6, he was driving from his home in Dayton to visit his sister in Weippe, Idaho, to discuss the circumstances surrounding their mother's death. Along the way, he stopped and picked up a stranded motorist who needed a jump. Mr. Ayerst then decided to stop at Mr. Suds to wash his truck. The unidentified motorist accompanied him to the car wash, and they went to the Zip Trip to get food once Mr. Ayerst finished washing his truck. Mr. Ayerst ultimately decided not to visit his sister and, instead, drove back home to Dayton.

Mr. Ayerst denied attaching a tow strap to his truck or seeing his passenger attaching a tow strap to anything. His theory was that his headlights "dipped" as described by Detective Denny because there were two homeless individuals sleeping in the car wash parking lot and he had to brake suddenly when backing up toward the doors to avoid backing over one of the sleeping men. Defense counsel's theory at trial was that

4

the security footage demonstrated there was insufficient time off-camera for either Mr. Ayerst or his passenger to attach the tow strap to the truck.

The jury found Mr. Ayerst guilty of attempted burglary in the second degree, second degree malicious mischief, and bail jumping. The trial court imposed a standard range sentence of 55.5 months based on Mr. Ayerst's offender score of 22, rejecting the State's request for an exceptional sentence pursuant to RCW 9.94A.535(2)(c).

## ANALYSIS

On appeal, Mr. Ayerst claims there was insufficient evidence to convict him of attempted burglary in the second degree.

### A. STANDARD OF REVIEW FOR SUFFICIENCY CHALLENGES

"Due process requires the State to prove all elements of the crime beyond a reasonable doubt." *State v. Washington*, 135 Wn. App. 42, 48, 143 P.3d 606 (2006). In a sufficiency challenge, the inquiry is "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All reasonable inferences are drawn in the State's favor, and the evidence is interpreted most strongly against the defendant. *Id.* Circumstantial evidence receives the same weight as direct evidence. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004). This court

defers to the fact finder on the resolution of conflicting testimony, credibility

determinations, and the persuasiveness of the evidence. *Id.* at 874-75.

## B. SECOND DEGREE BURGLARY

Mr. Ayerst claims there is insufficient evidence to support his attempted burglary

conviction because the State failed to prove that he had any intent to commit a crime

inside the car wash. He contends that under *State v. Jackson*, 112 Wn.2d 867, 774 P.2d

1211 (1989), intent to commit a crime could not be inferred from his equivocal behavior.

A person commits second degree burglary "if, with intent to commit a crime

against a person or property therein, he or she enters or remains unlawfully in a building

other than a vehicle or a dwelling." RCW 9A.52.030(1). A person "attempts" an offense

when, with the intent to commit a specific crime, he or she takes a substantial step toward

committing the crime. RCW 9A.28.020(1). A "substantial step" is conduct that is

"'strongly corroborative of the actor's criminal purpose.'" *State v. Townsend*, 147

Wn.2d 666, 679, 57 P.3d 255 (2002) (quoting *State v. Aumick*, 126 Wn.2d 422, 427, 894

P.2d 1325 (1995)). The requisite intent for attempted burglary may be inferred where the

defendant attempted to enter a building by force and the manner of entry illustrated the

defendant's intent to enter for illegal reasons. *See e.g.*, *State v. Bencivenga*, 137 Wn.2d

703, 974 P.2d 832 (1999) (sufficient evidence of intent where defendant attempted to pry

open door to Kentucky Fried Chicken (KFC) at 3:30 a.m.); *State v. Brooks*, 107 Wn. App. 925, 927-28, 29 P.3d 45 (2001) (defendant's use of screwdriver to attempt to open door, rather than conventional methods of entry, illustrated defendant's intent to enter apartment for illegal reasons).

Mr. Ayerst claims that *Jackson* requires reversal of his attempted burglary conviction. The defendant in *Jackson* was charged with attempted second degree burglary after he repeatedly kicked a door window, damaging it, and fled when he realized a police officer was watching him. 112 Wn.2d at 870. Over the defendant's objection, the trial court instructed the jury that a person who attempts to enter or remain unlawfully in a building may be inferred to have acted with the intent to commit a crime against a person or property therein. *Id.* at 872. The Washington Supreme Court reversed the conviction and remanded for a new trial, holding the court erred by giving the instruction where the defendant engaged in equivocal behavior that could evince an intent to commit burglary or an intent to commit malicious mischief. *Id.* at 876.

Mr. Ayerst's reliance on *Jackson* is misplaced because *Jackson* only addressed instructional error and did not analyze the sufficiency of the evidence. Since Mr. Ayerst

does not assert instructional error, *Jackson*'s analysis is largely irrelevant to Mr. Ayerst's case.[3]

Instead, Mr. Ayerst's case is controlled by *Bencivenga*, 137 Wn.2d 703. In that case, a witness saw the defendant attempting to pry open the back door of a KFC at 3:30 a.m. *Id.* at 705. The defendant admitted to trying to force the door open but claimed he did not intend to steal anything and was simply trying to win a bet. *Id.* at 706. The trial court found the defendant guilty of attempted second degree burglary and Division One of this court reversed based on its reading of *Jackson*.

The Supreme Court reversed, holding that the analysis in *Jackson* only applies to the propriety of a permissive inference instruction. Although a judge may be restricted from guiding jurors' assessments of the facts, "[n]othing forbids a jury . . . from logically inferring intent from proven facts, so long as it is satisfied the state has proved that intent beyond a reasonable doubt." *Id.* at 709. "An essential function of the fact finder is to discount theories which it determines unreasonable." *Id.* Although an inference of guilt should not arise where other reasonable conclusions may be drawn, ultimately "it is the

---

[3] This court recently recognized in an unpublished opinion that "*Jackson* does not apply to the question of whether sufficient evidence supports a jury's verdict." *State v. Perez*, No. 35043-6-III, slip op. at 6 (Wash. Ct. App. Aug. 9, 2018) http://www.courts.wa.gov/opinions/index.cfm?fa=opinions.showOpinion&filename=350 436MAJ

province of the finder of fact to determine what conclusions reasonably follow from the particular evidence in a case." *Id.* at 711.

The evidence here was sufficient to permit a jury to find that Mr. Ayerst intended to burglarize the Mr. Suds. Mr. Ayerst drove his truck to the car wash at 2:30 in the morning accompanied by a passenger carrying a tow strap that matched the strap found on the damaged doors. The passenger disappeared in the direction of the doors and reappeared without the strap, and Mr. Ayerst proceeded to back the truck up to the equipment room doors. Although there was no direct evidence that Mr. Ayerst or his passenger attached his truck to the doors, the footage demonstrated that Mr. Ayerst's headlights "dipped" as he pulled away from the area of the doors, indicating that the truck was experiencing some drag or resistance consistent with the truck being attached to the doors. An officer then observed Mr. Ayerst and his passenger sitting across the street in the Zip Trip parking lot, suggesting that they may have been watching to see if their actions had drawn any attention before returning to remove property from the equipment room. This circumstantial evidence tended to show that not only was Mr. Ayerst trying to enter the Mr. Suds, he did so with the intent to commit a crime therein. The jury was entitled to make the reasonable inference that Mr. Ayerst intended to enter the car wash and remove property.

9

C. STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW (SAG)

Mr. Ayerst has filed a SAG in which he appears to assert ineffective assistance of counsel as well as an argument that the trial court erred by denying his *Knapstad*[4] motion to dismiss all charges.

### i. *Ineffective Assistance of Counsel*

Mr. Ayerst claims his trial counsel erred by failing to present evidence that the Clarkston Police Department received a call at 3:30 a.m. from a neighbor of the Mr. Suds reporting a loud noise, nearly one hour after Mr. Ayerst left the Mr. Suds.

To prevail on a claim of ineffective assistance of counsel, a defendant carries the burden of demonstrating (1) the attorney's performance was deficient—that is, it fell below an objective standard of reasonableness, and (2) the deficiency prejudiced the accused—that is, absent the deficiency there is a reasonable probability that the result of the proceeding would have been different. *State v. Humphries*, 181 Wn.2d 708, 719-20, 336 P.3d 1121 (2014). To rebut the presumption of effective assistance of counsel, the defendant must establish the absence of any "conceivable legitimate tactic explaining counsel's performance." *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004).

---

[4] *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986).

The only reference in the record regarding a neighbor hearing a noise is an Investigative Narrative prepared by Officer Lorz indicating that, "A neighbor stated that he may have heard a noise around 0330 hours that morning." CP at 43. There is nothing in the record to indicate that a neighbor called to report a noise nor is there any information regarding the neighbor's identity or trial counsel's efforts to investigate this statement. The factual record is therefore insufficient to review this argument.

Moreover, Mr. Ayerst has failed to demonstrate a substantial likelihood that the outcome of his trial would have been different had this limited evidence been introduced. The security footage placed Mr. Ayerst, a resident of Dayton, at the Mr. Suds in Clarkston in the middle of the night and in the company of a man carrying a tow strap that matched the strap found on the damaged doors. It also showed him backing his truck up to the doors and his headlights "dipping" as he drove away, suggesting the truck was attached to the doors by the strap. Although Mr. Ayerst denied damaging the doors and offered his own theory for why the headlights "dipped" as he drove away, the jury clearly did not find Mr. Ayerst credible. Given this evidence, Mr. Ayesrt has failed to demonstrate a reasonable probability that introduction of the single statement from the investigative report concerning the neighbor would have changed the outcome of the trial.

*ii. Motion to Dismiss Charges Pursuant to* Knapstad

Mr. Ayerst also claims he did not commit any of the crimes for which he was convicted and appears to allege that the court erred by denying his pretrial *Knapstad* motion to dismiss the charges.

A trial court has the inherent power to dismiss a criminal prosecution for insufficiency of the charge. *Knapstad*, 107 Wn.2d at 352-53. A court may only grant a defendant's pretrial motion to dismiss if there are no disputed facts and the undisputed facts are insufficient to support a finding of guilty. *Id.* at 356. A trial court's denial of a *Knapstad* motion is not reviewable on appeal following trial. *State v. Jackson*, 82 Wn. App. 594, 918 P.2d 945 (1996).

Since Mr. Ayerst's case proceeded to trial, his claim that the trial court erred by denying his *Knapstad* motion is not reviewable by this court. To the extent Mr. Ayerst's SAG is read as claiming insufficient evidence to support his three convictions, this argument also fails. As explained above, sufficient evidence supported Mr. Ayerst's conviction for attempted second degree burglary. As to the remaining offenses, Mr. Ayerst argues evidence outside the record that this court may not consider. On the record before this court, it appears that Mr. Ayerst's convictions were supported by sufficient evidence.

No. 35867-4-III
*State v. Ayerst*

## CONCLUSION

We conclude that sufficient evidence supports Mr. Ayerst's conviction for

attempted second degree murder and reject Mr. Ayerst's arguments raised in his SAG.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Pennell, J.

13