**FILED**
**JULY 12, 2018**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

## COURT OF APPEALS, DIVISION III, STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34741-9-III |
| | ) | (consolidated with |
| Respondent, | ) | No. 34742-7-III and |
| | ) | No. 34743-5-III) |
| v. | ) | |
| | ) | ORDER GRANTING MOTION |
| CHRISTOPHER JOHN CANNATA, | ) | FOR RECONSIDERATION |
| | ) | IN PART AND WITHDRAWING |
| Appellant. | ) | OPINION FILED APRIL 24, 2018 |

THE COURT has considered Appellant's motion for reconsideration and the answer thereto, and is of the opinion the motion should be granted in part. Therefore,

IT IS ORDERED, the motion for reconsideration of this court's decision of April 24, 2018, is hereby granted in part.

IT IS FURTHER ORDERED, the court's opinion filed April 24, 2018, is hereby withdrawn and a new opinion will be filed this day.

PANEL: Judges Siddoway, Fearing, Lawrence-Berrey

FOR THE COURT:



ROBERT E. LAWRENCE-BERREY
Chief Judge


IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34741-9-III |
| Respondent, | ) | (consolidated with |
| | ) | No. 34742-7-III and |
| v. | ) | No. 34743-5-III) |
| | ) | |
| CHRISTOPHER JOHN CANNATA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Christopher Cannata appeals the trial court's denial of his motion to withdraw guilty pleas, raising three challenges he is entitled to raise for the first time on appeal. While we reject his challenges to denial of his plea withdrawal motion, he points out an invalidity in the sentence ultimately imposed that we find sufficiently intertwined to address in this appeal. We affirm his convictions but remand for resentencing.

FACTS AND PROCEDURAL BACKGROUND

On June 20, 2016, the day he was set for trial on multiple charges, Christopher Cannata appeared before the Hon. John Cooney to enter guilty pleas instead. He pleaded guilty to six charges asserted in three criminal cases. Two were charges of second degree burglary and first degree theft for breaking into a Spokane restaurant in February

2015, and another two were for related second degree burglary and first degree theft counts for a break-in committed in August 2015. The final two charges were for the theft of a motor vehicle in August 2015 and a second degree assault with a baseball bat committed a few days later.

Plea negotiations on Mr. Cannata's behalf took place in the context of his extensive criminal history. By the time he was sentenced in these matters, Mr. Cannata had a history of 43 convictions, 18 of which were burglaries. Given his offender score of 9-plus, the standard sentencing ranges for the crimes ranged from 43 to 57 months on the low end, to 51 to 68 months on the high end. The State intended to request exceptional sentences based on the rapid recidivism and free crimes aggravators, and Mr. Cannata faced a maximum sentence of 55 years.

Mr. Cannata's court-appointed lawyer, Kevin Griffin, attempted to obtain a State recommendation of a 120-month sentence, but the State refused. The best Mr. Griffin was able to do for Mr. Cannata was to get the State's agreement to reduce the second degree assault charge to attempted second degree assault, preserving Mr. Cannata's eligibility for a drug offender sentencing alternative (DOSA). In return, the State required Mr. Cannata to agree to its determination of his offender score and stipulate that the facts supported the rapid recidivism and free crimes aggravators. The State insisted on remaining free to vigorously argue for an exceptional sentence up to the statutory

maximum on each count, to run consecutively.  The plea agreement recognized that Mr. Cannata would request prison-based DOSAs, to run concurrently.

The transcript of the hearing at which Mr. Cannata entered the pleas reflects the lawyers' oral agreement on all material terms of the plea agreements, a thorough advisement of Mr. Cannata by Judge Cooney, and apparent understanding and agreement by Mr. Cannata.  Mr. Cannata and Mr. Griffin signed the three statements on plea of guilty required by CrR 4.2(g), with the standard certifications that all provisions of the statements had been explained to and were understood by Mr. Cannata.

Before Mr. Cannata could be sentenced, however, he notified Mr. Griffin that he wished to withdraw his plea.  Mr. Griffin prepared a motion on Mr. Cannata's behalf, citing CrR 4.2(f), case law on the manifest injustice standard, and a statement of Mr. Cannata's grounds:

> Mr. Cannata asserts that he was not advised that the state would be seeking more than ten years in total confinement before the plea hearing, and that he has never been advised about the amount of restitution the state will be seeking.  The Defendant is respectfully arguing that he received ineffective assistance of counsel at the time of the guilty plea hearing, and that he would not have entered a guilty plea if he had been properly advised.  The Defendant asserts that he was stunned by learning the prosecutor could seek as much as 55 years of confinement at sentencing, and had no time to fully consider the implications of the guilty plea before the hearing began.

Clerk's Papers (CP) at 61-62.

The plea withdrawal motion was heard by the Hon. James Triplet.  The State provided him with a transcript of the hearing at which Judge Cooney accepted the pleas.

3

Through counsel, Mr. Cannata offered to explain why he voiced agreement and understanding in June but now claimed not to have understood the length of sentence to which he was exposed. Judge Triplet informed Mr. Cannata that he would want Mr. Griffin and the prosecutor to provide their recollection of the plea negotiations as well.

Mr. Cannata testified that he had expected the State to recommend a 120-month sentence at the guilty plea hearing and was shocked when he learned otherwise on reviewing plea materials presented to him that morning. He claimed he was unable to speak to Mr. Griffin about his concern because the two of them had only five minutes together, and the prosecutor was speaking with Mr. Griffin the entire time. Under questioning from the court, Mr. Cannata acknowledged that Mr. Griffin came to see him at the jail on June 19, the Sunday afternoon before he was set for trial. It was at 6:42 p.m. that day that Mr. Griffin notified the court of a tentative settlement of Mr. Cannata's charges and requested a plea hearing the following morning. Mr. Cannata told the court that Mr. Griffin spent only 20 to 30 minutes with him on the Sunday afternoon, talking to him and communicating by text message with the prosecutor. He said that Mr. Griffin never told him the State would be asking for a 55-year sentence.

Mr. Griffin was asked by the court about his recollection of events. He told the court that 120 months had been the goal of his negotiations, but the State never agreed to such a short sentence. He said he specifically discussed with Mr. Cannata that the State was free to ask for up to 55 years, although "[f]rankly, I thought it was unlikely to

4

occur." Report of Proceedings (RP) (Aug. 25, 2016) at 33. He told the judge that he engaged in a thorough review of the plea statements with Mr. Cannata. But advocating for Mr. Cannata, he said that during the guilty plea hearing, "my client was having an incredibly tough time, or appeared to be, listening to me, focusing; he was all over the place." *Id.* at 34. As for the amount of time Mr. Griffin met with Mr. Cannata on Sunday, June 19, both Mr. Griffin and the prosecutor were able to consult their telephones and identify 11 text messages they exchanged during the time Mr. Griffin was with Mr. Cannata. The messages began at 2:57 p.m. and ended at 4:47 p.m.

In providing his recollection of events, the prosecutor disputed Mr. Cannata's claim that he was unable to speak to Mr. Griffin on the morning Judge Cooney accepted the plea. The prosecutor told Judge Triplet that on the morning the guilty pleas were entered, Mr. Cannata arrived and immediately indicated he did not want to go forward with the pleas, after which the following occurred:

> I then gave the defense ample time to discuss this. In fact, we left the courtroom while Mr. Griffin and Mr. Cannata discussed the case. I would estimate that it was at least a half-hour of time between Mr. Griffin and Mr. Cannata, who discussed the case prior to the hearing actually commencing. So in other words, the hearing started a half-hour beyond, at least a half-hour beyond its anticipated start time to allow Mr. Griffin and Mr. Cannata additional time to discuss.
> At the end of that conversation, the decision was made by Mr. Cannata to go through with the plea.

*Id.* at 29.

At the conclusion of the hearing, Judge Triplet denied the plea withdrawal motion, stating, "[I]f I had any evidence to support an ineffective assistance or that Mr. Cannata didn't understand what he was doing, I wouldn't have a problem withdrawing a plea. I just don't see that evidence is in this case. A binding agreement was reached." *Id.* at 54-55.

Sentencing took place before Judge Triplet the following week. Characterizing Mr. Cannata as a prolific chronic offender, the State recommended a sentence of 40 years' total confinement followed by one year of community custody with a court-ordered substance abuse evaluation and follow-up treatment.[1]

Mr. Griffin asked the court to impose a DOSA. Apparently recognizing that the standard 59.5 month DOSA identified as the defense recommendation in the earlier plea statements could be perceived as too lenient, however, he told the court that Mr. Cannata was interested in the possibility of "back-to-back DOSAs." *Id.* at 99. During Mr. Cannata's allocution, Mr. Cannata, too, asked whether the court could "stack" DOSAs to arrive at a sentence that was not too lenient but would give him an opportunity for treatment. *Id.* at 110.

---

[1] Later in the sentencing hearing, defense counsel correctly informed the court that community custody could not be imposed in connection with the attempted assault conviction because it does not count as a crime against the person.

The court questioned both lawyers about whether consecutive DOSAs were authorized by statute and how they would be served. Mr. Griffin answered that the Department of Corrections would not release Mr. Cannata until he had served the confinement portion of each sentence, so the treatment portions would be served last. He also expressed his belief that back-to-back DOSAs would not be considered an improper hybrid sentence. The prosecutor expressed uncertainty about how consecutive DOSAs would be handled, adding "I don't think that's contemplated by the statute." *Id.* at 127.

The court found compelling and substantial reasons to order an exceptional sentence and sentenced Mr. Cannata to the statutory maximum term on all counts. But he ordered some of the sentences served concurrently and ordered DOSAs for the attempted assault and theft of a motor vehicle convictions. The following chart illustrates the sentences imposed:

| Case Number | Charges | Maximum Fine | Sentence | |
|---|---|---|---|---|
| 1161-9 | Second Degree Burglary | 10 years, 20K | 10 years | *Concurrent* |
| | First Degree Theft | 10 years, 20K | 10 years | |
| 03270-5 | Second Degree Burglary | 10 years, 20K | 10 years | *Concurrent* |
| | First Degree Theft | 10 years, 20K | 10 years | |
| | Attempted Second Degree Assault | 5 years, 10K | 5 years DOSA | *Consecutive* |
| 03254-3 | Theft of Motor Vehicle | 10 years, 20K | 10 years DOSA | |

The result was a total standard sentence of 20 years' total confinement and a total DOSA

of 15 years, with the first 7.5 years of the DOSA to be served in total confinement and

the second 7.5 years to be served in community custody with treatment ordered.

While Mr. Griffin's DOSA proposal had been for terms based on the midpoint of

the standard sentence range, no one challenged the trial court's imposition of statutory

maximum-length DOSA terms.

Mr. Cannata appeals.

ANALYSIS

All of Mr. Cannata's assignments of error are raised, and can be raised, for the

first time on appeal. He challenges the trial court's denial of his motion to withdraw his

guilty pleas on three new grounds. He claims he was denied his right to effective,

conflict-free counsel to assist him with his plea withdrawal motion. Finally, he contends

that Judge Triplet violated due process, ER 605, and the appearance of fairness doctrine

by relying on his favorable experience with Mr. Griffin in denying Mr. Cannata's plea

withdrawal motion. We address the issues in the order stated.

I.    MR. CANNATA WAS NOT MISINFORMED ABOUT ANY DIRECT CONSEQUENCE OF HIS
      PLEAS

Mr. Cannata contends he was misinformed on three matters in entering his guilty

pleas:

> [H]e was misinformed that an exceptional sentence could be imposed as
> part of a DOSA sentence. Further, Cannata was misinformed about the

> standard range sentence for the attempted second degree assault count.
> Cannata was also misinformed about the length of the DOSA sentence for
> that count.

Br. of Appellant at 34.

There is a strong public interest in enforcement of plea agreements that are voluntarily and intelligently made. *State v. Walsh*, 143 Wn.2d 1, 6, 17 P.3d 591 (2001). Yet a trial court "shall allow a defendant to withdraw the defendant's plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice." CrR 4.2(f). An involuntary plea constitutes a manifest injustice. *State v. Wakefield*, 130 Wn.2d 464, 472, 925 P.2d 183 (1996). Due process requires that a defendant must be informed of the direct consequences of pleading guilty, in order that the plea be knowing voluntary and intelligent. *In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 297, 88 P.3d 390 (2004). If a defendant demonstrates that misinformation of a direct consequence was provided, he or she need not show it was material to his plea decision in order to obtain relief. *Id*. at 302. "[A] court will not speculate on the possible outcomes had the defendant been properly advised on the direct consequences of his plea." *In re Pers. Restraint of Bradley*, 165 Wn.2d 934, 940, 205 P.3d 123 (2009) (citing *Isadore*, 151 Wn.2d at 302).

While Mr. Cannata's present claims that he was misinformed differ from the grounds on which he sought to withdraw his pleas in the trial court, he may raise new challenges to the voluntariness of his plea for the first time on appeal. *Walsh*, 143 Wn.2d

9

at 7-8. And when a defendant has made a package plea deal, he or she may withdraw all of his pleas when misinformed as to direct consequences of some, but not all charges. *Bradley*, 165 Wn.2d at 941. The State does not dispute that Mr. Cannata's was a package deal.

Before turning to the misinformation alleged by Mr. Cannata, we touch on two sentencing issues that are not implicated in this assignment of error. In imposing sentence, the court imposed consecutive DOSAs, the legality of which was a matter of first impression. Nothing in Mr. Cannata's statement on plea of guilty informed (or misinformed) him that back-to-back DOSAs he would later ask for were authorized by statute, however. A challenge to the voluntariness of a plea based on misinformation must be based on actual or implicit misinformation. It cannot be based on the plea agreement's failure to accurately predict whether some future request for an unconventional sentence will prove legally viable.

The court also imposed DOSAs for terms greater than the midpoint of the standard range. As discussed in section IV below, we conclude this was error. But where a defendant enters into a plea agreement knowingly and voluntarily, any sentencing error by the trial court does not invalidate his plea; the remedy is resentencing. *See In re Pers. Restraint of Williams*, 111 Wn.2d 353, 361-62, 759 P.2d 436 (1988); *State v. Jennings*, 106 Wn. App. 532, 541-42, 24 P.3d 430 (2001).

No. 34741-9-III (consol. w/ No. 34742-7-III, No. 34743-5-III)
*State v. Cannata*

We turn, then, to the information Mr. Cannata was actually given and whether, as

he alleges, it was misleading.

> *Mr. Cannata received accurate information about the maximum sentence*
> *and standard sentence range he faced for attempted second degree assault*

Mr. Cannata contends he was misinformed about the standard range for attempted

second degree assault.  His statement on plea of guilty to the attempt charge included a

table containing the information:

6.　　**In Considering the Consequences of My Guilty Plea, I Understand That:**

(a)　　Each crime with which I am charged carries a maximum sentence, a fine, and a
***Standard Sentence Range*** as follows:

| COUNT NO. | OFFENDER SCORE | STANDARD RANGE ACTUAL CONFINEMENT (not including enhancements) | PLUS Enhancements* | COMMUNITY CUSTODY | MAXIMUM TERM AND FINE |
|---|---|---|---|---|---|
| 1 | 9 **+** | 47.25 - 63 months | N/A | None | 5 yrs; $10,000 |
| 2 | 9 **+** | 51 - 68 months | N/A | None | 10 yrs; $20,000 |
| 3 | 9 **+** | 43 - 57 months | N/A | None | 10 yrs; $20,000 |

CP at 40.

Count 1 was the attempted second degree assault charged under RCW

9A.36.021(1)(c) and RCW 9A.28.020(1).  It is undisputed that 47.25 to 63 months is 75

percent of the sentencing grid sentence range for a completed second degree assault, and

11

therefore the "standard sentence range" for the anticipatory offense under RCW

9.94A.533.[2]

During the hearing at which Mr. Cannata entered his guilty plea, Judge Cooney

orally reviewed the crimes to which Mr. Cannata was pleading guilty and asked him if he

understood that the standard range for the second degree assault was 43.25[3] to 63

months. He also asked him if he understood that the maximum for that count was 5

years in prison. Mr. Cannata answered "Yeah" to both questions. RP (June 20, 2016) at

6-7.

Mr. Cannata nonetheless contends it was error to identify the high end of the

---

[2] RCW 9.94A.533(2) provides that "[f]or persons convicted of the anticipatory offenses of criminal attempt, solicitation, or conspiracy under chapter 9A.28 RCW, the *standard sentence range* is determined by locating the sentencing grid sentence range defined by the appropriate offender score and the seriousness level of the completed crime, and multiplying the range by seventy-five percent." (Emphasis added.) Under RCW 9.94A.515, assault 2 has a seriousness level of IV. Under the sentencing grid, the sentence range for an offender score of 9 or more and a crime having the seriousness level of IV is 63 to 84 months. RCW 9.94A.510. Seventy-five percent of that sentencing range is 47.25 to 63 months.

[3] Mr. Cannata makes passing reference to the fact that the trial court orally misstated at this point in the plea hearing that the low end of the standard range was 43.25 months rather than the correct 47.25 months. Br. of Appellant at 44. It is not the focus of his argument on appeal, and understandably so. Mr. Cannata's negotiated, written plea statement identified the correct low end, and he signed the plea agreement, representing that his lawyer had explained, they had discussed, and he fully understood all of the statement's paragraphs. CP at 45. These facts present an inconsistency, not a misrepresentation. Unless demonstrated otherwise (and Mr. Cannata does not) we presume that he did not rely on the trial court's oral misstatement—either because he did not take note of it, or because the information was not material to him.

12

standard range as 63 months when the statutory maximum for the crime is 5 years. RCW 9A.20.021(1)(c).

Mr. Cannata relies on this court's opinion in *State v. Brooks*, 107 Wn. App. 925, 29 P.3d 45 (2001), which construed the meaning of "standard range" in former RCW 9.94A.120(6)(b) (1999), dealing with DOSA sentences. The statute provided:

> If the [midpoint of the] standard range is greater than one year . . . the judge may waive imposition of a sentence within the standard range and impose a sentence that must include a period of total confinement in a state facility for one-half of the midpoint of the standard range.

*Brooks*, 107 Wn. App. at 933 (alterations in original).

Mr. Brooks had been convicted of attempted burglary, which—like Mr. Cannata's attempted second degree assault—was a class C felony with a maximum sentence of 60 months. The trial court had determined Mr. Brooks's standard range to be 47.25 months to 63 months, with a midpoint of 55.125 months. It ordered him to serve half that amount—27.5625 months—in total confinement. Mr. Brooks argued that the high end of the "standard range" as used in the DOSA statute could not exceed the statutory maximum, and a range of 47.25 to 60 months would have a midpoint of 53.625, leading to a period of total confinement of only 26.8125 months.

This court agreed. It construed "standard range" by relying on the statutory definition of "sentence range" at former RCW 9.94A.030(35) (1999)—"'the sentencing court's discretionary range in imposing a nonappealable sentence'"—and on the general

proposition that a court may not provide for a term of confinement that exceeds the statutory maximum for the crime. *Brooks*, 107 Wn. App. at 932. In other words, it viewed the statutory definition of "standard range" as meaning the end result of determining the discretionary range within which the sentencing court operates.

We have no quarrel with *Brooks*. But then, as now, the definition provision of the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, states that its definitions apply "[u]nless the context clearly requires otherwise." RCW 9.94A.030; and *see* LAWS OF 2000, ch. 28, § 2. Provisions of the SRA that explain how to arrive at the sentencing court's discretionary range use the term "standard sentence range" in a different sense that is not adjusted for the statutory maximum sentence. In those provisions, it means the sentence range appearing at the applicable intersection in the sentencing grid.

For example, RCW 9.94A.530(1) provides, referring to the sentencing grids at RCW 9.94A.510 and .517, that "[t]he intersection of the column defined by the offender score and the row defined by the offense seriousness score determines the *standard sentence range*." (Emphasis added). It further provides that "[t]he additional time for deadly weapon findings or other adjustments as specified in RCW 9.94A.533 shall be added to the entire *standard sentence range*." (Emphasis added). Earlier-cited RCW 9.94A.533(2) provides that for persons convicted of anticipatory offenses, "the *standard sentence range* is determined by locating the sentencing grid sentence range defined by the appropriate offender score and the seriousness level of the completed crime, and

14

multiplying the range by seventy-five percent." It is RCW 9.94A.505(5) that then provides that "[e]xcept as provided under RCW 9.94A.750(4) and 9.94A.753(4), a court may not impose a sentence providing for a term of confinement or community custody that exceeds the statutory maximum for the crime as provided in chapter 9A.20 RCW."

Courts, too, use "standard sentence range" in both senses, sometimes referring to the applicable intersection in the sentencing grid that may or may not turn out to be the court's discretionary range. *E.g., State v. Jordan*, 180 Wn. 2d 456, 460, 325 P.3d 181 (2014) ("Under the SRA, the standard sentencing range for an offense is determined by cross-referencing a defendant's offender score with the offense's seriousness level on the sentencing grid provided under RCW 9.94A.510."); *State v. Haddock*, 141 Wn.2d 103, 108, 3 P.3d 733 (2000) (describing "the standard range" as found at the intersection of the offender score column and seriousness level rows of the sentencing grid); *see also* WASH. STATE CASELOAD FORECAST COUNCIL, 2017 WASHINGTON STATE ADULT SENTENCING GUIDELINES MANUAL 66[4] (describing "the standard sentence range" as being the range appearing in the pertinent intersection of the columns and rows of the sentencing grid).

In *State v. Thomas*, the Supreme Court even used the term in both senses in the same paragraph, speaking of "a" standard sentence range that is determined from the grid

---

[4] http://www.cfc.wa.gov/PublicationSentencing/SentencingManual/Adult _Sentencing_Manual_2017.pdf [https://perma.cc/ZKD9-3ER9].

and the defendant's ("his") standard range sentence as limited by the statutory maximum. 150 Wn.2d 666, 671, 80 P.3d 168 (2003) ("[A]lthough the grid provides *a standard sentence range* for Thomas's third count . . . of 51-68 months (the intersection of seriousness level III and an offender score greater than 9), *his standard range sentence* for that count is 51-60 months, since the statutory maximum for a class C felony is five years." (emphasis added)).

Mr. Cannata's plea statement, including the information in the table reproduced above, was in the form approved by CrR 4.2(g). That form "requires that *both* the applicable standard sentence range and the statutory maximum sentence established by the legislature be set forth," which this court has held provides "a clear indication that the drafters of CrR 4.2 did not believe these to be one and the same." *State v. Kennar*, 135 Wn. App. 68, 74, 143 P.3d 326 (2006). Having been provided in writing and orally with both the applicable standard range from the sentencing grid and the maximum sentence he faced within that range, Mr. Cannata was not misinformed about the upper limit of the sentencing court's discretion.

*Mr. Cannata was not misinformed about the length of a DOSA sentence for the attempted second degree assault count*

Mr. Cannata pleaded guilty to attempted second degree assault in the same case in which he pleaded guilty to second degree burglary and first degree theft. Of the three

counts, the second degree burglary subjected him to the longest sentence: a standard range of 51 to 68 months, with a maximum sentence of 10 years.

The section of Mr. Cannata's plea statement setting forth the parties' sentence recommendations indicated that Mr. Cannata would be asking for a DOSA of 59.5 months with 29.75 months to be served in confinement, and 29.75 months to be served on community custody subject to DOSA conditions. Implicit in the recommendation was the statutory presumption of concurrent sentencing, *see* RCW 9.94A.589(1)(a), with the result that the total length of his sentence would be the length of his longest sentence. The correct midpoint for the 51 to 68 month range of the second degree burglary count is 59.5 months. The 29.75 month figure is the correct length of the terms, respectively, of total confinement and community custody.

Mr. Cannata's plea statement did not set forth the number of months that would be spent in total confinement or community custody under a DOSA sentence for the attempted assault. The only information in the plea statement that applied to the length of a DOSA sentence for the attempted assault was generic, appearing in the "Notification Relating to Specific Crimes" section. It stated in relevant part that if the judge imposed the prison-based DOSA alternative,

> [T]he sentence will consist of a period of total confinement in a state facility for one-half of the midpoint of the standard range, or 12 months, whichever is greater. During confinement, I will be required to undergo a comprehensive substance abuse assessment and to participate in treatment.

17

> The judge will also impose a term of community custody of one-half of the midpoint of the standard range.

CP at 44. This is an accurate statement of the law. *See* RCW 9.94A.662.

Mr. Cannata nonetheless argues that this language, together with remaining information in the plea statement, was misleading, suggesting that one-half of the midpoint of the standard range was one-half of the midpoint of the standard range found at the applicable intersection of the sentencing grid. But as previously discussed, the term "standard range" is used in two senses, and the language set forth above does not imply which sense of "standard range" applies. *Brooks* answers that question. Because the language in the plea statement does not say that the standard range used in calculating the length of a DOSA is the standard range appearing in the applicable intersection of the sentencing grid, it does not misinform.

> *Mr. Cannata was not misinformed that an exceptional sentence could be imposed as part of a DOSA sentence*

Finally, Mr. Cannata argues that he was "misinformed that he was subject to an exceptional DOSA sentence." Br. of Appellant at 36. He bases this on the fact that the plea statement said "the judge could sentence Cannata to a prison-based DOSA sentence," and elsewhere "inform[ed] Cannata that he is subject to an exceptional sentence on every count based on the presence of stipulated aggravating factors." *Id.* at 36-37.

18

The plea statements addressed the fact that the court could sentence Mr. Cannata to a prison-based DOSA because he was eligible for the sentencing alternative and the defense would be requesting it. In the plea statement, however, the defense recommended only a standard prison-based DOSA. The defense had explicitly agreed not to argue for an "exceptional down," *see* CP at 33, 42, and 49, and it requested concurrent sentencing. *See id.*

The plea statements addressed the possibility of exceptional sentencing because the State had disclosed its intention to "vigorously argue for any sentence[ing] up to the statutory maximum on each count and file[,] to run consecutive." *Id.* The State never indicated it would argue for any DOSA, let alone an exceptional DOSA.

Nowhere, then, do the plea statements discuss the possibility of a sentence that is both a prison-based DOSA and an exceptional sentence. That possibility was raised for the first time months later at sentencing, as a request from Mr. Cannata.

For purposes of Mr. Cannata's challenge to denial of his plea withdrawal motion, he has not shown he was misinformed. He was not told in his plea statement or during the hearing when his guilty pleas were accepted that he could receive a sentence that was both a prison-based DOSA and an exceptional sentence. The plea statement identifies many possibilities. The fact that the possibilities could be combined into a sentence that would not be possible—a combination not suggested by the plea statement—is not misinformation that constitutes a manifest injustice supporting withdrawal of a plea.

19

II.    MR. CANNATA WAS NOT DENIED EFFECTIVE, CONFLICT-FREE COUNSEL

Mr. Cannata argues he was denied his right to effective, conflict-free counsel to

assist him with his plea withdrawal motion.  He cites a handful of cases from other

jurisdictions for the proposition that a per se conflict of interest arises with existing

counsel when a defendant raises a claim of ineffective assistance of that counsel.

Alternatively, he argues that an actual conflict arose when Mr. Griffin served as a

witness against him at the plea withdrawal hearing.

The Sixth Amendment to the United States Constitution guarantees the right to

effective assistance of counsel at all critical stages of a criminal prosecution.  U.S.

CONST. AMEND. VI; *State v. Harell*, 80 Wn. App. 802, 804, 911 P.2d 1034 (1996).  This

right "includes the right to conflict-free counsel." *In re Pers. Restraint of Gomez*, 180

Wn.2d 337, 348, 325 P.3d 142 (2014).  While the "Rules of Professional Conduct"

dealing with conflicts can serve as a guide to what is reasonable, they do not embody the

constitutional standard for effective assistance of counsel.  *Id.* at 349.  Rather, to

demonstrate a denial of the constitutional right to conflict-free counsel, a defendant must

show: (1) defense counsel had actual conflicting interests, and (2) the conflict of interest

"'adversely affected' his performance." *Id*. at 348-49 (quoting *Cuyler v. Sullivan*, 446

U.S. 335, 350, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980)).

Longstanding case law from this court rejects Mr. Cannata's argument for a rule

finding a per se conflict in a case such as this:

20

> [The defendant] urges us to adopt a rule requiring the appointment of substitute counsel in cases in which a defendant wishes to argue his counsel's ineffectiveness. In these cases, he argues, counsel is faced with an impossible conflict of interest unless he is allowed to withdraw, and the defendant is denied representation unless substitute counsel is appointed. However, if a defendant could force the appointment of substitute counsel simply by expressing a desire to raise a claim of ineffective assistance of counsel, then the defendant could do so whenever he wished, for whatever reason. . . . We decline to adopt such a rule.

*State v. Stark*, 48 Wn. App. 245, 253, 738 P.2d 684 (1987); *accord State v. Rosborough*, 62 Wn. App. 341, 346-47, 814 P.2d 679 (1991).

This case is also unlike cases that Mr. Cannata cites, such as *United States v. Del Muro*, 87 F.3d 1078 (9th Cir. 1996), in which support for the type of ineffective assistance alleged would come from third parties, outside of the existing court record. As explained in *Del Muro*, in that situation the lawyer would have a disincentive to locate and present third party evidence of his ineffectiveness. Here, the relevant evidence would come from Mr. Cannata, Mr. Griffin and the prosecutor; and Judge Triplet made clear that he intended to require evidence from all three. Mr. Cannata identifies no other evidence of Mr. Griffin's alleged ineffectiveness that needed to be located and that Mr. Griffin would have an incentive to ignore.

This brings us to Mr. Cannata's argument that Mr. Griffin had an actual conflict of interest in his role as witness. An actual conflict of interest means a conflict that affected counsel's performance, as opposed to a mere theoretical division of loyalties. *State v. Dhaliwal*, 150 Wn.2d 559, 570, 79 P.3d 432 (2003) (citing *Mickens v. Taylor*, 535 U.S.

21

162, 171, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002)). To show a violation of the Sixth Amendment right to conflict-free counsel, the defendant must always demonstrate that his or her attorney had a conflict of interest that adversely affected his or her performance. *Id.* at 570-71. Mr. Cannata does not meet his burden of proving an actual conflict that adversely affected Mr. Griffin's performance.

Powerful evidence against Mr. Cannata existed apart from anything Mr. Griffin might say. Mr. Cannata signed three plea statements that disclosed the State's intent to seek an exceptional sentence of up to 55 years, and did so under the certification, "My lawyer has explained to me, and we have fully discussed, all of the above paragraphs. I understand them all. . . . I have no further questions to ask the judge." CP at 35-36, 45, 51-52. Mr. Cannata entered his guilty pleas following exhaustive questioning by Judge Cooney, during which Mr. Cannata acknowledged his awareness of the maximum sentence for each crime, and that he was aware of and understood that the State was "free to recommend up to 55 years in prison . . . the maximum consecutive sentences on everything." RP (June 20, 2016) at 7. During the plea withdrawal hearing, the prosecutor contradicted Mr. Cannata's claim that Mr. Griffin and Mr. Cannata spoke for only 20 to 30 minutes on the Sunday afternoon when the plea was negotiated, and contradicted the claim that Mr. Cannata and Mr. Griffin had no opportunity to speak on the morning of the plea hearing.

At the plea withdrawal hearing, the State correctly contended that Mr. Cannata's claim to have been misled about his potential sentence operated as a partial waiver of the attorney-client privilege. The prosecutor predictably wished to question Mr. Griffin. Judge Triplet himself understandably wanted to hear from Mr. Griffin. Regardless of who represented Mr. Cannata at the hearing on the plea withdrawal motion, Mr. Griffin would have been examined about what he told Mr. Cannata.

In signing his client's plea statements, Mr. Griffin had certified, "I have read and discussed this statement with the defendant. I believe that the defendant is competent and fully understands the statement." CP at 36, 45, 52. It was unsurprising, then, that he testified that he read and discussed the statements with Mr. Cannata and believed that Mr. Cannata fully understood them. Mr. Griffin did not have the option of providing false answers when asked by Judge Triplet about the events leading to the entry of Mr. Cannata's pleas. *See* RPC 3.3(a)(1) ("A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal."). Regardless of who represented Mr. Cannata at the hearing on the plea withdrawal motion, Mr. Griffin would have had to provide answers he believed to be true.

Since Mr. Griffin would have been questioned and required to provide truthful information about what he told Mr. Cannata regardless of who acted as Mr. Cannata's counsel at the plea withdrawal hearing, the information Mr. Griffin provided cannot constitute performance that was adversely affected by a conflict of interest.

23

As to everything else that took place in connection with the motion, Mr. Griffin advocated for Mr. Cannata effectively. He filed a motion to withdraw the pleas on Mr. Cannata's behalf that identified the applicable law and Mr. Cannata's grounds. At the plea withdrawal hearing, Mr. Griffin announced "our position" that Mr. Cannata's pleas were involuntary. RP (Aug. 25, 2016) at 5. From evidence that Mr. Cannata was distressed and lacked focus on the morning his pleas were accepted and evidence of a suicide watch Mr. Cannata was placed on thereafter, Mr. Griffin argued that his client's claims of confusion and shock were credible.

Mr. Cannata fails to identify any aspect of Mr. Griffin's performance that was adversely affected by an actual conflict. Instead, he relies on *Harell*, which predated the decisions in *Mickens* and *Dhaliwal*, and did not involve a defendant's burden of demonstrating an actual conflict adversely affecting counsel's performance. And at Harell's plea withdrawal hearing, his defense lawyer declined to assist Harell at all. *Harell*, 80 Wn. App. at 803. The trial court's refusal to permit withdrawal of the plea was reversed on appeal because Harell was outright denied assistance of counsel at a critical stage. It was not because he received representation that was adversely affected by an actual conflict. No actual conflict is shown here.

24

III.   THE TRIAL COURT DID NOT VIOLATE ER 605, DUE PROCESS, OR THE APPEARANCE
       OF FAIRNESS DOCTRINE

Finally, Mr. Cannata argues, based on comments the judge made about Mr. Griffin

during the plea withdrawal hearing, that Judge Triplet violated ER 605 and the

appearance of fairness doctrine, and denied him due process.

As a preface to his oral decision on the plea withdrawal motion, Judge Triplet

stated that Mr. Griffin was unique in how often criminal defendants specifically asked to

be represented by him.  The judge said he viewed Mr. Griffin as an exceptionally careful

and zealous advocate for his clients.  Immediately following these comments, however,

the judge stated:

> Now, does that mean that in a particular case that any good attorney
> couldn't drop the ball?  No.  But I just want to generally have those things
> on the record regarding my experiences with how Mr. Griffin has practiced
> in my courtroom.

RP (Aug. 25, 2016) at 42.  Given that the judge did not rely on those experiences for his

decision, there was no need to put them on the record.  In retrospect, given the issue now

raised, it was ill-considered to do so.  But the issue on appeal is whether Judge Triplet's

statement about those experiences resulted in reversible error, not whether they were ill-

considered.

Turning first to a claim that the comments violated ER 605, that rule states, "The

judge presiding at the trial may not testify in that trial as a witness."  The rule has been

interpreted broadly to provide that "[a] trial judge may rely on his or her own personal

25

knowledge only if the facts in question rise to the level of indisputably required for judicial notice under Rule 201." 5A KARL B. TEGLUND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 605.2, at 377 (6th ed. 2016). ER 605 itself provides that "[n]o objection need be made in order to preserve the point."

Had Judge Triplet ruled based on an inference from his courtroom experiences that Mr. Griffin must have been careful in this case, Mr. Cannata would have a viable argument. But when Judge Triplet's oral decision is read as a whole and the context of his statements about Mr. Griffin is considered, it is clear the judge did not rule based on an inference from his courtroom experiences.

Judge Triplet's complimentary statements about Mr. Griffin's representation of criminal defendants in the past were relatively brief, taking up less than 2 full pages of the hearing transcript. Judge Triplet immediately discounted the importance of his past experience with Mr. Griffin, pointing out that excellent attorneys still make mistakes. The judge then proceeded in an explanation that goes on for 13 pages of the hearing transcript to identify the factual basis for his conclusion that Mr. Cannata's guilty pleas were knowing, intelligent and voluntary. The facts he identified for support included prior proceedings in Mr. Cannata's case, Judge Cooney's colloquy, Mr. Cannata's signed plea statements, and the information about the events of June 19 and 20 provided by the prosecutor and Mr. Griffin. During this identification of his factual findings, the judge never again referred to his courtroom experience with Mr. Griffin. Fairly read, the

judge's comments about his experience with Mr. Griffin were an observation made but then set aside. Mr. Cannata does not demonstrate that Judge Triplet relied on those courtroom experiences when denying the plea withdrawal motion.

Mr. Cannata argues alternatively that Judge Triplet's statements about his favorable experience with Mr. Griffin violated the appearance of fairness doctrine. "The appearance of fairness doctrine seeks to insure public confidence by preventing a biased or potentially interested judge from ruling on a case." *In re Marriage of Meredith*, 148 Wn. App. 887, 903, 201 P.3d 1056 (2009). In reviewing a claimed violation, we presume that a trial judge properly discharges his or her official duties without bias or prejudice. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 692, 101 P.3d 1 (2004). To overcome the presumption, a party "must provide specific facts establishing bias." *Id.*

Mr. Cannata does not provide specific facts establishing a biased ruling on his plea withdrawal motion.[5] During the course of the plea withdrawal hearing, Judge Triplet was complimentary of both the prosecutor and Mr. Griffin, explaining that he would not require either to be sworn before hearing their recollection of relevant events.

---

[5] An appearance of fairness objection has been deemed waived when not raised in the trial court, *see State v. Tolias*, 135 Wn.2d 133, 140, 954 P.2d 907 (1998), but Mr. Cannata makes several arguments why we should not apply RAP 2.5(a). Without necessarily agreeing with his arguments, we exercise our discretion to review the appearance of fairness issue.

Mr. Cannata is essentially arguing here, as he did under ER 605, that Judge Triplet was relying on his favorable courtroom experience with Mr. Griffin to believe Mr. Griffin over Mr. Cannata. The argument is not really an appearance of fairness argument; it is premised on a contention that the judge believed certain facts about Mr. Griffin, not that he was biased in Mr. Griffin's favor. If Judge Triplet had been biased in Mr. Griffin's favor, he would have granted the relief Mr. Griffin was requesting, which was that Mr. Cannata be allowed to withdraw his pleas.

In any event, the argument fails for the same reason the essentially identical ER 605 argument fails: fairly read, Judge Triplet's ruling was based on relevant facts, not on his prior experience with Mr. Griffin.

Finally, Mr. Cannata argues that Judge Triplet's disclosed opinion of Mr. Griffin deprived him of due process. But he relies only on reasons mirroring his ER 605 and appearance of fairness contentions. His argument that judges violate due process by relying on personal knowledge in resolving a legal dispute fails because, as we determined in addressing ER 605, he does not demonstrate Judge Triplet's reliance on personal knowledge. His argument that due process was violated by the judge's alleged partiality fails for the further reason that there are only a few extraordinary situations where due process—as distinguished from common law, statute, or the professional standards of the bench and bar—requires recusal of a judge. *Tatham v. Rogers*, 170 Wn. App. 76, 91-92, 283 P.3d 583 (2012). Mr. Cannata's plea withdrawal hearing before

Judge Triplet does not fall within those extraordinary situations. *See id.* at 91 (due process requires recusal where the judge has a financial interest in the suit, where the judge was responsible for deciding whether a defendant should be charged (i.e. a "'one-man grand jury' process" (quoting *In re Murchison*, 349 U.S. 133, 136, 75 S. Ct. 623, 99 L. Ed. 942 (1955))), and where someone "'with a personal stake in a [proceeding has] had a significant and disproportionate influence in placing the judge on the case'" (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 884, 129 S. Ct. 2252, 173 L. Ed. 2d 1208 (2009))).

IV.    REMAND FOR RESENTENCING IS REQUIRED BY THE IMPROPER TERM OF THE DOSA SENTENCES

As pointed out by the State, Mr. Cannata did not assign error to the two DOSA sentences imposed by Judge Triplet. In unsuccessfully arguing that he was misinformed about the term of a DOSA sentence, however, Mr. Cannata makes the legitimate point that the sentence the judge ultimately imposed for attempted assault exceeded the statutorily-permitted term of one-half the midpoint of the standard range. In his reply brief, Mr. Cannata argues that we should construe his assignment of error to denial of plea withdrawal motion as presenting an intertwined challenge to the sentences. Reply Br. at 10-15.

Good reason exists for construing Mr. Cannata's assignments of error as challenging the DOSA sentences for attempted assault and theft of a motor vehicle. We

29

remand for resentencing, at which any DOSA sentence imposed must be for a term equal to the midpoint of the standard sentence range as construed in *Brooks*. We do not reach the issue of whether consecutive DOSA sentences are legal. It was Mr. Cannata who asked for consecutive DOSA sentencing, recognizing that Judge Triplet would likely view concurrent DOSA sentencing as too lenient. This is a closer legal issue, and the parties are free to argue it further at the time of resentencing.[6]

We affirm the convictions but remand for resentencing consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____               _____
Lawrence-Berrey, C.J.                          Fearing, J.

---

[6] In this connection, we deny Mr. Cannata's motion to supplement the record on appeal with information on the Department of Corrections' calculation of Mr. Cannata's sentence. That information can be brought to the attention of the court at the time of resentencing.