IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ANDREA J. CLARE, | ) | |
| | ) | No. 36814-9-III |
| Respondent, | ) | (Consolidated with |
| | ) | No. 36911-1-III) |
| v. | ) | |
| | ) | |
| KEVIN P. CLARE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — After a protracted dissolution proceeding and trial, both parties

appeal the trial court's final orders. Kevin Clare argues that the trial court went too far in

finding statutory limiting factors that supported a restriction on his residential time and

decision-making. He also challenges the stalking no-contact order issued at trial. Andrea

Clare argues that the trial court did not go far enough, claiming that the court failed to

make findings of domestic violence even though the evidence supported this finding.

Both parties submitted briefing that was deficient in several respects.

We deny the appeal and cross-appeal and affirm the trial court's decisions. We

begin our analysis in light of the oft-cited standard of reviewing family law decisions

under an abuse of discretion lens:

> We once again repeat the rule that trial court decisions in a
> dissolution action will seldom be changed upon appeal. Such decisions are

> difficult at best.  Appellate courts should not encourage appeals by tinkering with them.  The emotional and financial interests affected by such decisions are best served by finality.  The spouse who challenges such decisions bears the heavy burden of showing a manifest abuse of discretion on the part of the trial court.

*In re Marriage of Landry*, 103 Wn.2d 807, 809, 699 P.2d 214 (1985) (citing *In re Marriage of Kozen*, 103 Wn.2d 470, 478, 693 P.2d 97 (1985).

## BACKGROUND

A.   THE MARRIAGE

The following facts are drawn primarily from testimony at trial and the trial court's findings of fact.

Andrea Clare and Kevin Clare married on June 25, 2005.  Approximately two years later, Ms. Clare disclosed to Mr. Clare that she had another relationship shortly before the wedding.  This created trust issues in the marriage.  After that conversation, Mr. Clare insisted that Ms. Clare let him know if she was going out with anyone other than a client or partner.

Thereafter, the couple had three children together, ages 9, 8, and 5, at the time of trial.  Mr. Clare acted as the primary stay-at-home parent.  Ms. Clare ran the family finances.  Ms. Clare is an attorney, and Mr. Clare is a crop-dusting pilot.  For the most part, the marriage was unremarkable save an incident in 2013 when Mr. Clare pushed Ms. Clare in a parking lot.  Ms. Clare testified that Mr. Clare never physically hit her.

2

In the spring of 2015, Mr. Clare suspected Ms. Clare of having an affair and began monitoring her location with a cell phone application (app). In May 2015, he drove to Ms. Clare's office and showed her the app, indicating that he could see where she was located. In August 2015, Ms. Clare traveled to her grandmother's home. Convinced she was with someone else, Mr. Clare demanded that Ms. Clare put her grandmother on the phone in the middle of the night to confirm Ms. Clare was with her grandmother. When she returned from this trip, Mr. Clare went through her travel garments, looking for evidence of an affair.

In December 2015, Mr. Clare looked through Ms. Clare's phone without her permission and forwarded several of her work e-mails to his own account.

The parties separated on February 6, 2016, and Ms. Clare moved into her own apartment. Initially, the children spent equal time with each parent. Ms. Clare changed phone providers to prevent Mr. Clare from tracking her location. In April 2016, she was showing Mr. Clare child support worksheets on her phone. When she became distracted, Mr. Clare looked through her phone and read text messages confirming that Ms. Clare was having a relationship with her law partner, George Telquist. Mr. Clare said he was so angry he could "Pop George" and "Pop You." Clerk's Papers (CP) at 2468.

After this, Mr. Clare continued to monitor Ms. Clare's activities through mutual friends and acquaintances. At the advice of his attorney, Mr. Clare began keeping a journal of incidents that he thought would be relevant to the dissolution.

3

B.   THE LITIGATION

Ms. Clare filed for divorce in Franklin County Superior Court on August 11, 2016. While Ms. Clare sought a relatively equal residential schedule, Mr. Clare argued that he had been the primary parent during the marriage and insisted on being named the primary residential parent. Mr. Clare moved for the appointment of a guardian ad litem (GAL) to investigate the children's best interest. Ms. Clare objected, arguing there was no need for a GAL since there were no limiting factors.

In July 2018, the GAL submitted a 178-page report. The GAL noted that Ms. Clare was no longer seeking joint custody but instead was seeking primary custody because Mr. Clare would not work with her on co-parenting. The GAL attached a copy of Mr. Clare's journal as an exhibit to her report. In her report, the GAL recommended against designating Mr. Clare as the primary parent:

> Given Mr. Clare's past and current behaviors it is more likely than not that primary placement of the children would result in them being denied the benefit of their mother's input into their lives. This would be to the actual detriment of the children. Therefore, this GAL doesn't believe this option to be in the best interest of the children.

CP at 979. The GAL noted that Mr. Clare's journal exposed the extent of his questioning, which she believed was emotionally abusive to the children. She provided several examples of improper questioning. The GAL also pointed out that Mr. Clare has a history of refusing to allow Ms. Clare to participate in decisions for the children and

4

overriding her decisions. "When she would try to make choices for the children, he would find passive[-]aggressive ways to punish her." CP at 982.

Ultimately, the GAL recommended a joint residential schedule so long as Mr. Clare would "submit to a forensic psychological evaluation for the purpose of determining if his behaviors are the result of a mental illness that may be rectified by treatment." CP at 993, 1001. The GAL recommended that sole decision-making authority be granted to Ms. Clare to alleviate parental alienation and chaos concerns.

Shortly after this report was submitted, the court moved the trial date from July 31 to October and authorized depositions of the parties and the GAL. On August 2, Mr. Clare had his deposition taken. On August 14, the GAL filed an amendment to her July 23 report. She indicated that in light of Mr. Clare's deposition testimony and the new trial date, she was no longer recommending shared custody.

At trial, the GAL explained why she changed her recommendation. She testified that shortly before she filed her July report, she spoke with Mr. Clare about her upcoming report. Mr. Clare was apologetic, upset, and crying during this call because the GAL would be recommending shared residential time. At his deposition a few weeks later, the GAL observed that Mr. Clare was not contrite or concerned. Instead, he was smug, arrogant, and unapologetic for his actions. During the deposition, not only did Mr. Clare admit to checking on Ms. Clare's location, having her put her grandmother on the phone,

and checking her travel garments for evidence of an affair, but he did not see anything wrong with these actions.

As the litigation continued, each parties' respective positions on custody changed. As the trial court found:

> [Ms. Clare] began to perceive that the [Mr. Clare's] aggressiveness in litigation and his insistent behavior in dealing with the children and in other issues following separation mirrored the controlling behavior that characterized their relationship during the marriage, as described in the Findings. Her position at trial was that she should have primary custody and sole decision-making because of his ongoing abusive behavior characterized by stalking and coercive control.

CP at 2439.

On the other hand, Mr. Clare continued to maintain his position that he should be named primary custodial parent up until shortly before trial. The court found that "[f]aced with the possibility that his insistence on primary custody perhaps might not put him in the best light, at trial he requested that the parties have equal residential time." CP at 2439. Mr. Clare also suggested that decision-making authority be split among the parents based on subject matter.

### C.   STALKING NO-CONTACT PETITION

In her petition for dissolution, Ms. Clare asked for a protection order. In August 2016, she filed a request for an ex parte restraining order. In March 2018, Ms. Clare and her law firm filed a federal complaint against Mr. Clare, alleging that he had been accessing Ms. Clare's work e-mails and calendar through an iPad she had previously used

during the marriage, and that such actions violated the Electronic Communications

Privacy Act of 1986, 18 U.S.C. §§ 2510-2523.  In June, Ms. Clare filed a petition for an

anti-harassment or stalking no-contact order based on the same allegations.  The trial

court issued a temporary anti-harassment order under RCW 10.14.080.

D.    THE TRIAL

Because of conflicts and recusals, Judge John Lohrmann from Walla Walla

presided over all preliminary matters and the trial.  The trial began in January 2019, and

lasted 11 days.  Parenting matters took up 8 of the 11 days.  At the beginning of trial, the

parties stipulated to the admission of the GAL's reports.  Along with the GAL, both

parties called numerous witnesses and experts.  Ms. Clare called Charles Deery,[1] and Mr.

Clare called Dr. Kenneth Cole, Ph.D., and Dr. Marnee Milner, Ph.D.

At the conclusion of the evidence, the court issued a significant letter opinion.  In

addition, the court combed through the proposed findings of each party and modified or

deleted them according to the court's determinations.  The court acknowledged the

evidence presented on domestic violence and intimate partner violence.  And yet it

recognized "a dearth of testimony regarding more recent or recurring acts of physical

violence on the part of [Mr. Clare]."  CP at 2440.

---

[1] Mr. Deery's name is also spelled "Derry" throughout the record.  On the witness stand, he testified that the correct spelling is "Deery."  Report of Proceedings (January 4, 2019) at 103.

The court also acknowledged the testimony and reports submitted by numerous witnesses:

> Adding to the mix is the fact that neither of the psychologists who examined [Mr. Clare] found any diagnosable psychological condition, though both acknowledged that a domestic violence perpetrator does not necessarily present with any diagnosable medical or psychological condition. Instead, such person may still have behavioral traits which may be characteristic of an abuser. The Court finds that [Mr. Clare] does so exhibit traits of coercive and controlling behavior to such an extent that it is abusive. [Mr. Clare] is indeed guilty of abusive conduct toward [Ms. Clare] both during their marriage and afterwards. The rules of conduct that he imposed following her disclosure of her affair prior to their marriage, his need to know always where she was and what she was doing, his use of the "Find my iPhone" app, his unreasonable examination of her panties for evidence of an extramarital affair, his unauthorized reading of her text messages and/or [e-mails], his questioning of the children and third parties regarding her activities and whereabouts—all these mitigate toward a finding of coercive control which in turn could be defined as stalking under RCW 26.50.010(3)(c) and RCW 9A.46.110.

CP at 2441.

Despite its opinion that Mr. Clare's actions could be defined as stalking, the court did not find domestic violence, nor did it find emotional abuse, as recommended by the GAL. Instead, the court concluded that the abusive behavior should be considered in determining the residential schedule under RCW 26.09.187(3). The court analyzed each factor in the statute and applied the facts as found following the trial. Generally speaking, the court found six of the seven statutory factors to weigh equally in each parent's favor. As to the first, or "(i)" factor, the court found that Mr. Clare's abusive behavior put the children's relationship with their mother at risk. Based on this finding,

the court rejected joint custody and designated Ms. Clare as the primary parent with sole decision-making authority. CP at 2444. While not finding domestic violence, the court directed Mr. Clare to complete a DV MRT[2] educational program and a parenting class. Upon completion of these programs, Mr. Clare's residential time and decision-making authority could be increased.

Based on the same findings, the court entered a stalking no-contact order.

Mr. Clare appealed the trial court's parenting plan and stalking no-contact order, and Ms. Clare cross-appealed the court's failure to find statutory limitations and denial of her request for attorney fees.

ANALYSIS

A. MOTIONS TO STRIKE

After Mr. Clare filed his last appellate brief, Ms. Clare filed a motion to strike several portions of his briefs, alleging that Mr. Clare's briefs misrepresented facts, failed to properly assign error, improperly included issues for the first time in reply and mischaracterized Ms. Clare's federal claims. Under RAP 10.3(a)(5), each factual allegation within a brief must include a reference to the record. In this case, the briefs of both parties make numerous factual allegations without citations to the record.

Under RAP 10.3(a)(4), the appellant's brief must contain "a separate concise statement of each error a party contends was made by the trial court, together with the

---

[2] Domestic violence Moral Reconation Therapy.

9

issues pertaining to the assignments of error." The court conducted an exhaustive review of the record for this case. To the extent that a parties' briefs do not conform to these rules, we are able to discern the noncompliance and have declined to consider the allegations or issues. *See Sherry v. Financial Indem. Co.*, 160 Wn.2d 611, 160 P.3d 31 (2007) (court declined to consider facts recited in the briefs that were not supported by the record); *Rutter v. Rutter*, 59 Wn.2d 781, 370 P.2d 862 (1962) (court will not consider appellant's contention where his argument is not supported by assignment of error).

> [A] motion to strike is typically not necessary to point out evidence and issues a litigant believes this court should not consider. No one at the Court of Appeals goes through the record or the briefs with a stamp or scissors to prevent the judges who are hearing the case from seeing material deemed irrelevant or prejudicial. So long as there is an opportunity (as there was here) to include argument in the party's brief, the brief is the appropriate vehicle for pointing out allegedly extraneous materials—not a separate motion to strike.

*Engstrom v. Goodman*, 166 Wn. App. 905, 909 n.2, 271 P.3d 959 (2012).

For these reasons, we deny the motions to strike.[3]

B.    SUMMARY OF THE ISSUES

In the final parenting plan, the superior court designated Ms. Clare as the primary residential parent. In addition, the court found limiting factors as set forth in RCW

---

[3] One of Ms. Clare's motions to strike includes a claim that Mr. Clare's reply brief violated RAP 10.3(c) by including a statement of the case. At the same time, Ms. Clare filed her own reply brief containing a statement of the case. We do not consider new factual allegations raised for the first time in a reply brief. *Cowiche Canyon Conserv. v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

26.09.191. Based on these findings, the court concluded that joint decision-making is not in the children's best interest and allocated sole decision-making authority to Ms. Clare regarding the children's education, health care, and religious upbringing. CP at 2444. The court also ordered Mr. Clare to participate in treatment before his residential time would be increased to a normal schedule. CP at 2492. Post-treatment, Mr. Clare's residential schedule with the children during school is every other weekend, alternating Wednesdays and an alternating holiday schedule. During the summer, the children spend two weeks with each parent on an alternating schedule. Finally, the court ordered a stalking no-contact order.

Although Mr. Clare assigns error to numerous findings, he makes three principled arguments on appeal. First, he raises several evidentiary issues. Next, he challenges the trial court's imposition of limitations in the parenting plan and contends that the court abused its discretion by setting a final residential schedule with less than equal time. Finally, Mr. Clare challenges the imposition of a stalking no-contact order.

We reject Mr. Clare's appeal for several reasons. First, many of the evidentiary challenges he identifies are waived because they are being raised for the first time on appeal. RAP 2.5(a). Second, as an appellate court, we do not reweigh the evidence or determine credibility. To the extent that evidence was disputed, the trial judge is best positioned to weigh evidence and credibility in family law matters. *Chatwood v. Chatwood*, 44 Wn.2d 233, 266 P.2d 782 (1954). We do not review the trial court's

11

credibility determinations or weigh conflicting evidence "'even though we may disagree with the trial court in either regard.'" *In re Marriage of Black*, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017) (quoting *In re Welfare of Sego*, 82 Wn.2d 736, 740, 513 P.2d 831 (1973)).

Third, Mr. Clare fails to relate his issues on appeal to his assignments of error. In his brief, he specifically assigns error to 17 findings of fact. Throughout his briefing, he seems to challenge several other findings. Under RAP 10.3(a)(4), an appellate brief shall contain "[a] separate concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error." Mr. Clare's brief does not correlate his assignments of error with the issues presented. To the extent that his assignments of error are not included in the issues he presents, we find they are waived.

Fourth, one of Mr. Clare's issues on appeal is now moot. The trial court imposed two limitations under RCW 26.09.191. First, it granted Ms. Clare sole decision-making authority. Second, it limited Mr. Clare's residential schedule until he completed a DV MRT class. Mr. Clare acknowledged he had completed this treatment at oral argument, and his residential schedule has reverted to a standard schedule.

Fifth, the trial court's findings, used to support the remaining limitation on decision-making authority, the residential schedule, and the no-contact order, are supported by substantial evidence.

On cross-appeal, Ms. Clare argues that by finding stalking sufficient to support a civil stalking order, the court found domestic violence and was required to impose additional domestic violence limitations under RCW 26.09.191(1)(c). Ms. Clare's argument fails to recognize the difference between criminal stalking under RCW 9A.46.110 and civil stalking under RCW 7.92.020. Contrary to her assertion, the record shows the trial court imposed a civil stalking order. It did not impose a criminal stalking order upon which domestic violence RCW 26.09.191(1)(c) restrictions could be based. She also challenges the trial court's failure to award her attorney fees. We find her arguments unpersuasive and reject her cross-appeal.

The residential schedule was properly based on factors set forth in RCW 26.09.187 and was not an abuse of discretion.

Both parties appeal the trial court's findings and conclusions pertaining to stalking. Following trial, the court found that Mr. Clare's actions were abusive and "could" be defined as stalking, but specifically declined to find domestic violence or intimate partner violence. Nevertheless, the trial court ordered a stalking no-contact order, which included a finding of stalking under RCW 7.92.020. On appeal, Mr. Clare argues that the court's findings are not supported by substantial evidence and the findings do not support the no-contact order.

We affirm the trial court's parenting plan and stalking no-contact order. The evidence was sufficient to support the no-contact order.

We turn first to the evidentiary challenges raised by Mr. Clare.

C.   GAL REPORT

*Admissibility*

Mr. Clare's first evidentiary challenge is to the GAL report and testimony.  On appeal, he contends that the GAL was biased, and her recommendations and conclusions were based on inadmissible expert opinion and child hearsay.  To the extent that Mr. Clare alleges that the GAL report or testimony was inadmissible as evidence, we decline to consider this argument because it was not raised below.  An appellate court may refuse to review any claim of error that was not raised in the trial court.  RAP 2.5(a); ER 103(a).  "The purpose underlying issue preservation rules is to encourage the efficient use of judicial resources by ensuring that the trial court has the opportunity to correct any errors, thereby avoiding unnecessary appeals." *State v. Hamilton*, 179 Wn. App. 870, 878, 320 P.3d 142 (2014).

In this case, the GAL report was admitted at trial without objection and by agreement.  Attached to the GAL report were reports from several experts that the GAL considered and incorporated.  These included Ms. Clare's experts, Dr. Mindy Mechanic, and Mr. Deery.  While Mr. Clare's trial brief reminded the court of the GAL's obligation, he did not raise any specific admissibility objections to the GAL or her report.  The trial court did not make any rulings regarding the admissibility of anything contained within the GAL report, particularly child hearsay or the attached reports of Dr. Mechanic, Dr.

Cole, Dan Morgan, and Mr. Deery. At no time during the entire trial testimony were there any objections to child hearsay. Dr. Mechanic and Mr. Morgan did not testify at trial, so no objections or rulings occurred in connection to those opinions. Therefore, Mr. Clare failed to preserve the child hearsay issue or any admissibility challenges to "expert" reports attached to the GAL report.

*Bias*

Mr. Clare also contends that the GAL was biased in her investigation and conclusions. In support, he points to the witnesses she interviewed or did not interview and the basis for her opinions. Citing *In re Marriage of Bobbitt*, 135 Wn. App. 8, 24-25, 144 P.3d 306 (2006), he contends that she failed to maintain objectivity, fairness, and independence in violation of GALR 2(b). In *Bobbitt*, the trial court denied a motion to remove the GAL for violating the GAL Rules. While finding that the GAL violated the rules, the court found that the trial court did not abuse its discretion by retaining the GAL. *Id*. at 28.

In this case, Mr. Clare alleges that the GAL also violated the GAL rules. However, he did not file a motion to remove the GAL. As the court in *Bobbitt* noted, a motion to remove a GAL is reviewed for abuse of discretion. *Id*. at 23. In this case, the trial court was never asked to exercise discretion on this point. Any remaining concerns about the GAL's bias go toward credibility, not the admissibility of her testimony. *State v. Post*, 59 Wn. App. 389, 407, 797 P.2d 1160 (1990). Credibility determinations are

15

solely for the trier of fact and are not reviewable on appeal. *Morse v. Antonellis*, 149

Wn.2d 572, 574, 70 P.3d 125 (2003).

D.   EXPERT TESTIMONY

Mr. Clare also challenges the trial court's admission, use, and reliance on the

expert testimony of Mr. Deery and Dr. Mechanic.

The GAL report incorporated the reports of several experts hired by both parties,

including Ms. Clare's experts, Dr. Mechanic and Mr. Deery.  Mr. Deery testified at trial,

Dr. Mechanic did not.  In his trial brief, Mr. Clare objected to the admissibility of

opinions by Dr. Mechanic and Mr. Deery because their opinions did not meet

professional or evidentiary standards for admissibility.

At trial, the GAL testified that these reports did not change her recommendation

other than to suggest Mr. Clare's psychological evaluation should include an evaluation

for intimate partner violence.  Indeed, the GAL even cautioned: "I mean Chuck Derry

from the other side of the country saying, 'I believe Kevin Clare chooses to do this,'

without ever seeing him, it doesn't ring true to me."  Report of Proceedings (RP)

(January 3, 2019) at 12.  When Mr. Deery took the stand to testify, Mr. Clare's attorney

renewed his objection on the grounds that Mr. Deery was not qualified as an expert

witness because he had no formal education on domestic violence.

A trial court's decision to qualify a witness as an expert is reviewed for abuse of

discretion. *In re Marriage of Katare*, 175 Wn.2d 23, 38, 283 P.3d 546 (2012).  We will

not disturb a trial court's exercise of discretion to qualify a witness as an expert except in cases of obvious abuse. *Id.* Under ER 702, an expert witness may provide opinion testimony when scientific, technical, or specialized knowledge will assist the trier of fact. A witness may qualify as an expert from "knowledge, skill, experience, training, or education." ER 702.

Mr. Deery's curriculum vitae indicated no collegiate diploma of any kind but did include over ten years of experience providing treatment to individuals convicted of domestic violence and providing training on the cycle of domestic violence to criminal justice entities and testimony as an expert in Minnesota on criminal matters. The trial court qualified Mr. Deery as an expert on domestic violence while expressing some reservations about the basis for his opinions. Given Mr. Deery's experience working with persons convicted of domestic violence, the trial court did not abuse its discretion in qualifying him as an expert witness.

Mr. Clare primarily asserts that the trial court erred by relying on Dr. Mechanic's report and Mr. Deery's opinion to support the trial court's findings. Mr. Deery testified that based on his review of the court file and a few conversations with Ms. Clare, he believed that Mr. Clare had "intimate partner abuse issues." RP (January 4, 2019) at 155. Dr. Mechanic's report, attached as an exhibit to the GAL report, also included opinions about the controlling nature of Mr. Clare's behavior toward Ms. Clare. CP 1357-58. Mr. Clare argues that the trial court's admission, use, and reliance on these reports and

17

Deery's testimony was error under ER 702 and 703 because neither expert ever met or evaluated Mr. Clare.

Under ER 703, an expert testifying at trial can rely on information already in the record. On appeal, Mr. Clare argues that the opinions of Mr. Deery and Dr. Mechanic violated the American Psychological Association's Guidelines for Forensic Psychology because they evaluated Mr. Clare without ever meeting with him. Mr. Clare cites no authority to support his position that compliance with these guidelines is a prerequisite to the admissibility of an expert's opinion under ER 703.

If anything, compliance with these forensic guidelines goes toward weight and credibility of an expert's opinion, not admissibility. As an appellate court, we do not reweigh evidence. *Harrison Mem'l Hosp. v. Gagnon*, 110 Wn. App. 475, 485, 40 P.3d 1221 (2002). If Mr. Deery's opinion was not credible because he failed to interview Mr. Clare or because he violated forensic guidelines, then these deficiencies are fair game for cross-examination. Indeed, in this case, Mr. Clare's attorneys were able to cross-examine Mr. Deery on his qualifications and bias. Notably, despite Mr. Deery's testimony to the contrary, the trial court did not find that Mr. Clare was a batterer or that his actions constituted intimate partner violence.

18

   E.    FINDINGS OF FACT & STATUTORY LIMITATIONS

   Mr. Clare assigns error to approximately 34 findings of fact.[4]  Instead of focusing

on whether each of the challenged findings is supported by substantial evidence, we start

with the ultimate objective of his many challenges: whether the trial court's finding of

coercive control and abusive behavior, used to support the parenting plan and the stalking

no-contact order, are supported by the evidence.  In the same context, we consider Ms.

Clare's challenge to the trial court's findings: the trial court erred by failing to impose

mandatory limitations under RCW 26.09.191(1)(c) when it found stalking sufficient to

support a no-contact order.

   We review the record in a light most favorable to the prevailing party to determine

if "substantial evidence supports the trial court's findings of fact and, if so, whether the

findings support the conclusions of law."  *Perry v. Costco Wholesale Inc.*, 123 Wn. App.

783, 792, 98 P.3d 1264 (2004) (citing *City of Tacoma v. State*, 117 Wn.2d 348, 361, 816

P.2d 7 (1991).  We do not review the credibility of the witnesses.  *State v. Bencivenga*,

137 Wn.2d 703, 709, 974 P.2d 832 (1999).  "The trial court's findings of fact are treated

as verities on appeal, so long as they are supported by substantial evidence."  *In re*

*Marriage of Chandola*, 180 Wn.2d 632, 642, 327 P.3d 644 (2014) (citing *Katare*, 175

---

[4] He specifically assigns error to 17 findings at the beginning of his brief, and we
counted another 17 challenges within his brief.

Wn.2d at 35). Substantial evidence is evidence that is sufficient to persuade a fair-minded person of the truth of the matter asserted. *Id.*

*Mandatory Limiting factors*

We start first with mandatory limitations. While generally, a trial court should strive to craft a residential schedule for children that encourages their relationship with their parents, limitations on parenting functions are required or allowed when certain factors are found. Under RCW 26.09.191(1), (2), a court "shall" set restrictions on a parent's schedule or authority if it finds serious abuse, neglect, or a history of domestic violence as defined by RCW 26.50.010(3). Under RCW 26.50.010(3), domestic violence includes "stalking as defined in RCW 9A.46.110."

In its memorandum decision, the court found "that [Mr. Clare] does so exhibit traits of coercive and controlling behavior to such an extent that it is abusive." CP at 2441. The court then listed several specific instances of behavior and found that these behaviors "mitigate toward a finding of coercive control which in turn *could* be defined as stalking under RCW 26.50.010(3)(c) and RCW 9A.46.110." CP at 2441 (emphasis added). Nevertheless, in its memorandum decision, the court expressly declined to find intimate partner violence or domestic violence. Indeed, the court specifically found that these factors did not exist. (Language to this effect in the proposed parenting plan was crossed out and initialed by the judge.) Instead, the court considered the controlling behavior along with the statutory factors and imposed discretionary limitations and the

20

final residential schedule.  The court also entered a stalking no-contact order under RCW 7.92.100 that included a finding of stalking.

Ms. Clare contends that by entering a stalking no-contact order, the court necessarily found stalking.  Since stalking is included within the definition of domestic violence under RCW 9A.46.110, she argues that the court was required to impose mandatory restrictions under RCW 26.09.191(1)(c).[5]  Ms. Clare's argument fails to acknowledge the order that was entered.  Ms. Clare's petition, and the subsequent order, were requested and entered under the civil stalking statute, chapter 7.92 RCW.  The definition of civil stalking under RCW 7.92.020(3)(a) is broader than the definition of stalking under RCW 9A.46.110.

Under RCW 26.09.191(1)(c), a parenting plan shall not require joint decision making if there is a history of domestic violence as defined in RCW 26.50.010(3), which in turn defines stalking under the criminal statute, RCW 9A.46.110.  The stalking no-contact order was issued under RCW 7.92.100.  The definition of stalking for purposes of a stalking no-contact order includes the criminal definition under RCW 9A.46.110, but

---

[5] In her brief, Ms. Clare misrepresents to this court that she filed two petitions for domestic violence no-contact orders.  *See* Br. of Resp't at 20, 40.  She does not cite the record in support of this factual assertion.  *See* RAP 10.3(a)(5).  Her claim is inaccurate.  In her petition for dissolution, she asked for a protection order.  In August 2016, she filed a request for an ex parte restraining order.  She also filed a petition for anti-harassment and/or a stalking no-contact order.  There is a significant difference between a domestic violence no-contact order under chapter 26.50 RCW and a stalking no-contact order under RCW 7.92.030.

also includes additional conduct that would not qualify as criminal stalking. *See* RCW 7.91.020(4)(c). Thus, a trial court's finding that stalking occurred sufficient to support a stalking no-contact order under RCW 7.92.020 does not necessarily equate to criminal stalking under RCW 9A.46.110, which is necessary to support mandatory conditions under RCW 26.09.191(1)(c).

Ms. Clare's briefing does not provide any analysis of chapter 7.92 RCW, or the differences in definitions. She also fails to articulate any prejudice from the trial court's decision. Ms. Clare argues that the limitation under RCW 26.09.191(1)(c) is mandatory. Assuming the trial court had made findings of stalking under the criminal statute, the limitation under this section would prevent the trial court from requiring mutual decision-making. But the trial court already designated Ms. Clare as having sole decision-making authority under the discretionary section of this statute.

To the extent that Ms. Clare is arguing that the trial court was required to find domestic violence in light of the evidence, she fails to cite any authority to support this position. RAP 10.3. As we mentioned above, the trial court's determination of the weight and credibility assigned to evidence is a decision that will not be disturbed on appeal. *Chatwood*, 44 Wn.2d at 240.

*Discretionary Limitations*

Even when mandatory restrictions are not required, a court has the discretion to impose restrictions when "[a] parent's involvement or conduct may have an adverse

22

effect on the child's best interests," and certain statutory factors are found. RCW

26.09.191(3). The restrictions that a court may impose under this subsection are different

than the provisions required in every parenting plan under RCW 26.09.187. *Chandola*,

180 Wn.2d at 644. While the terms of a residential schedule established under RCW

26.09.187 may have the practical effect of substantially restricting a parent's contact with

his child, limitations on a parent's geographical location, travel, or conduct are only

authorized by RCW 26.09.191. *Id.*

In this case, the court found the existence of two factors that supported

discretionary limitations. Based on these factors, the court exercised discretion to place

restrictions on Mr. Clare's decision-making authority and required Mr. Clare to complete

treatment before his residential time would revert to a regular schedule. Mr. Clare

acknowledged at oral argument that he had completed the treatment ordered by the court.

Since the limitations placed on his residential time under RCW 26.09.191(3) are no

longer in effect, the issues on this limitation are now moot. *Orwick v. City of Seattle,* 103

Wn.2d 249, 253, 692 P.2d 793 (1984). Consequently, we focus our attention on the

remaining limitation that restricts Mr. Clare's decision-making authority.

The provisions of a parenting plan must include an allocation of decision-making

authority. RCW 26.09.184(5). The allocation must be done in a way that minimizes the

child's exposure to harmful parental conflict. RCW 26.09.184(1)(e). Under RCW

26.09.187(2)(b), the court shall order sole decision-making authority if one parent is

23

opposed to mutual decision-making and the opposition is reasonably based on factors set forth in subsection (c), including the existence of a limiting factor under RCW 26.09.191.

The trial court allocated sole decision-making authority to Ms. Clare after finding that she was opposed to mutual decision-making and that limiting factors were present. Specifically, "Kevin Clare has a long-term emotional or physical problem that gets in the way of his/her ability to parent. Mr. Clare has exhibited concerning behaviors including but not limited to: 1) controlling behaviors (both mother and children); 2) abusive use of conflict; 3) [crossed out]; 4) excessive questioning of the children regarding the mother's home." CP at 2492.

In its memorandum decision, the court found that Mr. Clare does "exhibit traits of coercive and controlling behavior to such an extent that it is abusive." CP at 2441. The behaviors supporting this finding included Mr. Clare's rules of conduct imposed on Ms. Clare, his need to know her location, the use of a mobile phone application to track her location, an examination of her panties for evidence of an affair, reading her text messages and e-mails without permission, and questioning the children regarding Ms. Clare's activities. Similar to RCW 26.09.191(3)(e), the court also found that "Kevin Clare uses conflict in a way that endangers or damages the psychological development of a child listed [above]." CP at 2492.

Mr. Clare assigns error to numerous findings of fact used to support the court's ultimate finding that Mr. Clare's behavior was abusive and amounted to coercive control.

24

The trial court's finding that Mr. Clare exhibited coercive and controlling behavior is supported by substantial evidence. The record is replete with unchallenged findings that Mr. Clare monitored Ms. Clare's location and behavior. He tracked her location through cell phones and third parties. He accessed text messages and e-mails on her phone without her authorization. He gleaned information from the children about her activities and social circle. He admits that he is hypercritical of Ms. Clare's parenting. These unchallenged findings are sufficient to support the trial court's ultimate finding that Mr. Clare exhibited abusive and controlling behavior. In turn, the findings support the discretionary limitations under RCW 26.09.191(3) and the designation of Ms. Clare as the sole decision-maker.

To the extent that Mr. Clare challenges the trial court's findings, we note that his challenges go toward credibility and not sufficiency. For instance, Mr. Clare challenges the trial court's finding that his questioning was excessive. While acknowledging that the GAL testified to this fact, Mr. Clare discounts her credibility and points to contrary evidence by other witnesses. In essence, Mr. Clare asks us to reweigh the evidence by evaluating whether one witness was better qualified or more credible. This is not the test for determining if sufficient evidence supports the findings. The weight and credibility of evidence is a question for the trial court. *Black*, 188 Wn.2d at 127. Our role is to determine if there is substantial evidence that supports the trial court's finding. Here, the GAL's opinion provides substantial evidence to support the trial court's finding.

25

Mr. Clare also challenges the trial court's finding that he engaged in stalking behavior. He argues that since Ms. Clare went through most of the two-year dissolution proceedings without a no-contact order, she was not actually frightened by Mr. Clare, and if she was, her fear was unreasonable. Ms. Clare testified that she was fearful of Mr. Clare. The trial court's finding to this effect is supported by substantial evidence. Mr. Clare's challenge to this finding goes to credibility, not sufficiency.

F.    STALKING NO-CONTACT ORDER

These same findings were used by the court to support a stalking no-contact order. Mr. Clare assigns error to the trial court's stalking no-contact order. A trial court's decision to grant or deny a stalking protection order is reviewed for abuse of discretion. *See In re Marriage of Freeman*, 169 Wn.2d 664, 670-71, 239 P.3d 557 (2010).

As noted above, the stalking no-contact order was issued under RCW 7.92.100. The definition of stalking, for purposes of this statute, includes the criminal definition of stalking under RCW 9A.46.110, and also includes "Any course of conduct involving repeated or continuing contacts, attempts to contact, monitoring, tracking, keeping under observation, or following of another" that "[w]ould cause a reasonable person to feel intimidated, frightened, or threatened and that actually causes such a feeling," without lawful purpose, when the "stalker knows or reasonably should know" that the actions threaten, frightens or intimidates Ms. Clare, even if the stalker did not intend such

26

feelings. RCW 7.92.020(4)(c). The evidence presented in this case, along with the trial court's findings, supports a stalking no-contact order under this statute.

G.    ABUSE OF DISCRETION

Mr. Clare challenges the final residential schedule imposed by the trial court as an abuse of discretion. A trial court's parenting plan is reviewed for an abuse of discretion, which "occurs when a decision is manifestly unreasonable or based on untenable grounds or untenable reasons." *Katare*, 175 Wn.2d at 35 (citing *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997)). A trial court tasked with devising a parenting plan is guided by the best interests of the children. RCW 26.09.002. In addition, the court must consider which parent performs parenting functions, RCW 26.09.184, and apply specific statutory criteria set forth in RCW 26.09.187. Finally, the court must consider whether any limitations shall or may apply under RCW 26.09.191.

In evaluating a residential schedule, a court "shall make residential provisions for each child which encourage each parent to maintain a loving, stable, and nurturing relationship with the child, consistent with the child's developmental level and the family's social and economic circumstances." RCW 26.09.187. A court shall consider seven factors when establishing a permanent parenting plan, with the first being the most important:

> (i) The relative strength, nature, and stability of the child's relationship with each parent;

(ii) The agreements of the parties, provided they were entered into knowingly and voluntarily;

(iii) Each parent's past and potential for future performance of parenting functions as defined in RCW 26.09.004(3), including whether a parent has taken greater responsibility for performing parenting functions relating to the daily needs of the child;

(iv) The emotional needs and developmental level of the child;

(v) The child's relationship with siblings and with other significant adults, as well as the child's involvement with his or her physical surroundings, school, or other significant activities;

(vi) The wishes of the parents and the wishes of a child who is sufficiently mature to express reasoned and independent preferences as to his or her residential schedule; and

(vii) Each parent's employment schedule, and shall make accommodations consistent with those schedules.

RCW 26.09.187(3)(a).

Under this criteria, equal residential time is allowed but is not required. Instead, a court can consider equal residential time when the limitations of RCW 26.09.191 are not dispositive, and such a provision is in the best interest of the child. RCW 26.09.187(3)(b).

In this case, the trial court went through each statutory factor and found them to be relatively equal as applied to both parents, except for the first factor. While the court found that the children had strong bonds with each parent, it noted that "[Mr. Clare's] past desire to monitor and follow the conduct and activities of [Ms. Clare] and to enlist the children in this process is abusive and puts at risk the children's good relationship with [their] mother." CP at 2442. This finding was supported by substantial evidence.

Mr. Clare contends that there was no evidence that any of his questioning resulted in emotional abuse of the children. Preliminarily, we note that at trial, the court did not

find that Mr. Clare's questioning constituted "emotional abuse." While the GAL testified that Mr. Clare's questioning constituted emotional abuse, the trial court did not adopt this testimony. Nevertheless, the court did find her opinion to be persuasive. At trial, the GAL testified that "Kevin excessively questions his children with regards to [Ms. Clare's] parenting, what they do during [Ms. Clare's] time, who they spend time with. The questioning is of such that undermines mother and could have an impact on the children emotionally as to bonding and trusting each parent equally." CP at 2477.

In other words, the court found that the excessive questioning was a concerning behavior that had a negative impact on the children's relationship with their parents. This testimony supports the trial court's finding that the questioning was impacting the children's relationship with their parents. Mr. Clare's challenge to this testimony is based on his premise that the GAL was not credible, an issue we do not address on appeal.

Mr. Clare argues that the court's finding was used to impose limitations on his residential schedule. His argument assumes that absent this finding, he is entitled to equal residential time with the children. The statutory authority he cites does not support this conclusion. In other words, if we were to strike this finding, the existing residential schedule would still be reasonable and within the court's discretion under RCW 26.09.187. The parenting plan provides Mr. Clare with alternating weekends and holidays and rotating

two-week periods in the summer. Even without any limitations, this is a reasonable residential schedule and is not an abuse of discretion.

H.    ATTORNEY FEES

In her cross-appeal, Ms. Clare challenges the trial court's order denying her request for attorney fees based on Mr. Clare's intransigence. Attorney fees are generally not awarded in a civil action unless "'authorized by statute, by agreement of the parties, or upon a recognized equitable ground.'" *Woodcraft Const., Inc. v. Hamilton*, 56 Wn. App. 885, 887, 786 P.2d 307 (1990) (quoting *Clark v. Horse Racing Comm'n.*, 106 Wn.2d 84, 92, 720 P.2d 831 (1986). A trial court may consider whether additional legal fees were caused by one party's intransigence and award attorney fees on that basis. *Eide v. Eide*, 1 Wn. App. 440, 445, 462 P.2d 562 (1969). A party's "intransigence" is an equitable as opposed to a statutory basis for awarding attorney fees. *In re Marriage of Greenlee*, 65 Wn. App. 703, 708-09, 829 P.2d 1120 (1992) (fees ordered where party violated court order). "When intransigence is established, the financial resources of the spouse seeking the award are irrelevant." *In re Marriage of Morrow*, 53 Wn. App. 579, 590, 770 P.2d 197 (1989). Intransigence includes foot-dragging and obstruction, filing repeated unnecessary motions, or making the trial unduly difficult and costly by one's own actions. *Greenlee*, 65 Wn. App. at 708. A court may award attorney fees when one parent's intransigence causes the other parent to incur additional legal services, regardless

of financial abilities. *In re Marriage of Foley*, 84 Wn. App. 839, 846, 930 P.2d 929 (1997).

Here, the trial court found "both parties have engaged in the conduct during litigation that can be described as intransigence." CP at 2451. The court then listed several specific instances, including offsetting discovery violations and inconsistent positions taken by each party throughout the litigation. Specifically, the court noted that Ms. Clare had no concern about Mr. Clare's alcohol or marijuana use before the dissolution and assisted him in obtaining his pilot's license. However, during litigation, she disclosed her concern to the GAL, who then contacted the FAA. This disclosure resulted in collateral litigation. "Regardless of what was right or wrong about the reporting or obligation to report, [Ms. Clare] acted during litigation in a way that was inconsistent with her prior position and which may yet jeopardize [Mr. Clare's] employment." CP at 2451. When Mr. Clare's attorney contacted the GAL and requested that she cease her investigation with the FAA, Ms. Clare's attorney instructed the GAL to continue her investigation. Based on its finding that each side was intransigent, the court declined to award attorney fees.

The evidence supported the trial court's findings. The evidence includes the GAL report, the GAL's testimony and Mr. Clare's testimony.

For the first time on appeal, Ms. Clare contends her disclosures are protected under the First Amendment and anti-SLAPP[6] statute. Not only are these arguments waived, but they miss the point. The trial court found her intransigent in part for taking an inconsistent position that increased the costs of litigation, along with allegations of discovery violations that Ms. Clare does not address in her briefing. This decision is entirely within the trial court's discretion.

Both parties seek attorney fees on appeal, but neither party devotes a section of their initial brief to RAP 18.1, so their request is denied. *See In re Wash. Builders Ben. Trust*, 173 Wn. App. 34, 293 P.3d 1206 (2013) (The rule governing requests for appellate attorney fees requires more than a bald request for attorney fees on appeal.). "[A]rgument and citation to authority are required under the rule to advise this court of the appropriate grounds for an award of attorney fees and costs." *Id.* at 87 (citing *Austin v. U.S. Bank of Wash.*, 73 Wn. App. 293, 313, 869 P.2d 404 (1994).

---

[6] Strategic lawsuits against public participation. RCW 4.24.510.

CONCLUSION

In the end, we find that the trial judge carefully considered the evidence and issues presented and was well within the discretion afforded to him when making his difficult decisions in this case.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Siddoway, A.C.J.